## PIERCE v. BRASSFIELD, ET AL.

1. Upon a bill filed to rescind a contract for the sale of land, upon the allegation that the vendor fraudulently represented that a portion of the tract included in the bond for title, was contiguous to the residue, when in truth it was remote from it, and did not adjoin the other lands, the vendee is not entitled to relief by way of compensation, although the vendor admits there was a mistake, and a portion of the land sold omitted out of the bond for title, and another portion not sold inserted.
2. Where lands have been omitted out of a contract by mistake, which is· afterwards corrected by a Court of Chancery—*Quere?* will judgments obtained against the vendor, after the contract was made, but before its correction, have a *lien* upon it?

Error to the Chancery Court of Greene.

THE bill was filed by the plaintiff in error, and alledges, that the defendant, Brassfield, represented himself to be the owner of certain lands in Sumter county, which are particularly described, containing four hundred and fifty acres. That he sold the same to the complainant for $2,880, payable by four instalments, of $720 each, on the 1st January, 1837-8-9 and 40, and executed his bond for title, as soon as

he obtained the patents from the government. That Brassfield had not, at the time of the sale, or since, any right or title to the north half of the north-east quarter of section nine, containing eighty acres, which is part of the land mentioned, and referred to in said contract, and bond for title ; that this particular piece of land, is much more valuable than the residue of the tract, and defeats the object of the purchase, and that if he is compelled to keep the land, much more than one sixth part of the purchase money should be deducted ; that he was induced to become the purchaser of the lands, from the false and fraudulent conduct of the vendor, in falsely representing himself the owner.

That Brassfield has transferred the notes for the purchase money to other persons, who are named, and is utterly insolvent, having taken the benefit of the bankrupt law. That relying on the ability of Brassfield to make title, he paid the first of the notes which fell due, and that the transferees of the notes, McDonald & Springer, knew all the facts when they received the notes. The prayer of the bill is, for an injunction to the suits, which have been brought upon the notes, and for a rescission of the contract.

Brassfield, by his answer, admits the sale of the land, and execution of the bond for titles, as stated in the bill. He denies all fraud, and supposed he was selling lands of which he was the rightful owner. Insists that the eighty acres to which he had not a title, was inserted either by mistake or fraud of the complainant, as he drew the bond. He relies on the facts as showing a mistake ; that the *north half* of a quarter section, is not such a subdivision as is known at the land office, is not contiguous to the rest of the land, but lies a quarter of a mile from any land belonging either to him or complainant, and is besides of inferior quality, and but of little value ; that at the time of the sale, he was the owner of the east half of the south-east quarter of section 9, lying immediately adjoining the lands which are correctly described, and making with the rest a compact body, and which he therefore presumes was the land intended to be sold.

He further states, that he has procured a title to be made from the owner, to the complainant, of the north half of the north east quarter of section nine, mentioned in the bond for

title, and tenders it to the complainant; that the complainant can have a title to the residue when he desires it, &c.

The complainant filed a supplemental bill, in which he charges, that the land sold to him by Brassfield, was represented as lying together, and forming a compact body, and that the north half of the north east quarter of section nine, was represented as lying alongside the other land ; and contained upon it an eligible situation for building, making it desirable to the tract.   That he merely rode over the land, to ascertain its quality, and relying on the representations of Brassfield, did not compare it with the map, and did not know until the answer was filed, that it did not adjoin the other land.   That the possession of the north half of the north east quarter would be of no manner of use to him, and charges, that but for the fraudulent conduct of Brassfield, in representing himself to be the owner of the land, and that it was adjoining the rest of the lands, he would not have made the purchase.

He further charges, that Brassfield is insolvent, and that judgments to a large amount are in force against him.

Brassfield, in his answer, admits that he did represent the land he sold, or intended to sell, as lying contiguous, and adjoining, and that they do so lie.   Denies ever making any representation in regard to the north half of the north-east quarter of section nine, either before, at the time, or since the sale, and that it was inserted in the bond by the mistake, or fraud of complainant.   He believes that in truth it was the east half of the south-east quarter of section nine, which was sold, and omitted out of the bond, and the other half quarter which did not belong to him inserted.   Admits his insolvency, but denies all fraud.

The other defendants also answered the bill, but their answers are not necessary to be stated.

Testimony was taken, but it is unnecessary to state it here.

The Chancellor, at the hearing, dismissed the bill, which is now assigned as error.

A. Graham, of Greene, contended that it was evident an error had crept into the contract, and that Brassfield must

have been the cause of it, as the bond was written by Pierce at his dictation. Brassfield also admits, that the lands sold were contiguous and adjoining, and if this deficiency does not defeat the contract, compensation at least will be allowed. [1 Dess. Eq. 435; Littell's Sel. Cas. 396; 1 Littell, 44; 2 Ala. Rep. 632; 5 Monroe, 317; 1 A. K. Marsh, 427; 1 Littell, 359; 2 J. J. M. 513; 2 Bibb, 202; 3 Cranch, 270; 4 Dess. E. 149; 9 Porter, 422.]

ERWIN, contra. The bill does not alledge, nor attempt to make out a case of mistake, and therefore no relief can be granted on that head, if a mistake is shown. The whole purpose, of both the original and amended bills is, to rescind the contract for fraud, which is wholly denied, and there is not a particle of proof to sustain it. He further contended, that the original and amended bills, were incongruous, and destructive of each other. He cited 5 Johns. C. 79; 3 Peters, 210; Sugden on V. 170; 5 Ala. Rep. 55; 5 Cranch, 262; 2 Ala. Rep. 113.

This application comes too late, as the vendor cannot be put in *statu quo;* four years elapsed after the contract before the bill was filed.

ORMOND, J.—There is no difference whatever, in coming to the conclusion, that a mistake was made in drawing this bond for title, and that the north half of the north-east quarter of section nine, was inserted, instead of the east half of the south east quarter of the same section. This reconciles the statements of both parties, and accords with the design of the purchase. It is easy to perceive how such a mistake might be made; the parties being, as it appears, at a place remote from the land, when the contract was made, and the writings executed, and having no map of the section before them at the time, showing the relative position of the different parcels of which it was composed.

But this is not the case made by the complainant. Neither the original, or amended bill, alledge a mistake in drawing the bond for title; but the gravamen of the case, especially as it is more fully and deliberately set forth in the amended bill, is, that Brassfield fraudulently represented the seve-

eral parcels of which the tract was composed, to be adjoining each other, and forming a compact body, "and the north half of the north-east quarter, as lying along aside the other lands, and containing upon it, an eligible situation for building, which made it desirable to the tract," when in fact the north half quarter section above described, is altogether separate from the rest of the tract, and has not the advantage ascribed to it by the vendor.

It is unnecessary to consider whether such a representation as this, involving as it does, a mathematical impossibility, which the least reflection, or examination, would have shown to be incorrect, could be considered a fraud, because Brassfield denies having made any representation whatever, in reference to this particular piece of land, or that he sold, or intended to sell it; and there is no proof to countervail his denial. Upon the ground of fraud, then, the complainant has wholly failed to make out his case, and is not entitled to relief.

It has been already stated, that there can be no reasonable doubt entertained, that a mistake was made in drawing the title bond, but that mistake cannot be rectified on this bill, not only because that is not the purpose of the bill, but because the bill expressly negatives the idea of any mistake, and also, because in the amended bill, it is in effect alledged, there was no mistake—that the complainant intended to purchase, and Brassfield to sell, the north half of the north-east quarter, and the prayer is to rescind the contract, for the fraudulent representations of the vendor, in regard to this particular piece of land. It is true, Brassfield, in his answer, admits there was a mistake, and that the east half of the north-east quarter, which lay alongside the rest of the land, admitted on both sides to be correctly described, was the land which was really sold; but this will not aid the complainant. He is entitled to relief according to the allegations and prayer of the bill, when such allegations are admitted to be true, or their truth established by proof. To rectify this mistake upon this bill, would not be merely to grant relief without an allegation of the fact, but it would be to grant relief in direct opposition to the allegations, and prayer of the bill.

73

The reasons against allowing compensation for the supposed deficiency, are if possible still stronger than those already stated, against correcting the mistake. All that the complainant could ask, upon a bill properly framed, would be that he should get the land he purchased. It would be obviously unjust, after he had lain by for four years, that he should come into a Court of Chancery, and cast upon the vendor, the depreciation of the price of a portion of the tract, omitted out of the contract by mistake. To meet this objection, it is now urged, that the eighty acres of land, not included in the bond for title, is now covered by the *liens* of judgments obtained against Brassfield, since the land was purchased. If it was necessary to decide this question, we should be inclined to think, that the omission to insert in the bond for title, a part of the land actually sold, would not enable a judgment creditor to claim it in virtue of his *lien*, whatever the rule might be as to a *bona fide* purchaser from Brassfield without notice. The bond for title is merely evidence of the contract, and if the contract was reformed by a court of Chancery, the vendee would be reinvested with all his rights under the contract, so far at least as it did not interfere with other rights, acquired without notice of the mistake.

It is however a sufficient answer to all this reasoning, that the bill is not framed for this purpose.

The decree of the Chancellor, dismissing the bill, must be affirmed.