## CLOPTON v. MARTIN.

1. When by mistake a written agreement expresses more or less than the parties intended, a court of equity will reform it, but the proof of the mistake must be full and satisfactory.

2. When in the sale of a slave it was agreed the purchaser should have no warranty of soundness, and he was informed the slave had been some years before afflicted with fits, but no bill of sale was then executed—the parties agreeing that it should be so on a certain day when the price was to be paid—and the seller afterwards caused a receipt to be drawn expressing a warranty of the then soundness of the slave under the impression this would not bind him if the slave should afterwards be afflicted in a similar manner: *Held*, that a case of mistake was made out sufficient to warrant the cancellation of this clause of warranty.

Writ of Error to the Court of Chancery for the thirty-second district.

MARTIN is the complainant in this bill, and by it he alledges that on the 17th December, 1841, he sold and delivered to the defendant, Clopton, a certain slave, for the price of $700. That the sale and delivery was made without any warranty as to the health and soundness of the slave, and so accepted by the purchaser. Some years previous to the sale, the slave had been afflicted with spasms or fits. Of this the complain-

ant fully informed Clopton before the sale. In the conversations previous to the sale, the complainant asked $800 as his price, but for the reason that the slave had been so afflicted, although the complainant did not believe they would again recur, and because he did not intend to warrant his health, he agreed to take $700. The slave was then delivered to the purchaser, and has ever since remained in his possession.

After the sale (on the 20th of December of the same year) the purchaser applied to the complainant for a bill of sale of the slave, and he executed a receipt for the price paid, in which, after a warranty of the title, is found this clause: "And said negro man I warrant to be sound at this time."

The complainant procured a friend to draw this instrument, but his instructions were to make the written engagement conformable to the actual terms of sale, and it was not the intention to bind him in any manner on account of the previous affliction of the slave. The warranty contained in the writing was inserted therein by the ignorance and mistake of the complainant as to its effect, and is that much more than was contracted for by the purchaser.

The bill then states that Clopton is proceeding by suit on this warranty against the complainant, and as he is advised, will be able to prove that the slave after the purchase was afflicted in a similar manner with fits to what he was some years previous to the sale. The prayer is, that the bill of sale may be delivered up or otherwise disposed of as the court might direct, and Clopton be enjoined from proceeding in the suit commenced, or in any other suit on the warranty of soundness.

The defendant answered the bill, denying all its allegations in terms, but admits the complainant did inform him the slave had some five years before had fits when a small boy, but sold him as a sound slave. He denies the contract was complete until the delivery of the bill of sale; though the delivery was made previous to that time, yet the money was not to be paid until a few days afterwards, when the slave was to be conveyed. He also insists the warranty contained in the bill of sale is that agreed for by him.

The evidence in the cause may be thus condensed: Two of the sons of complainant assert they were present at the sale which took place on the 17th December, 1841. The

price agreed on was $700, and the defendant was then informed the slave had been afflicted with fits, but had had none for some two or three years.   The complainant was to give no warranty of soundness, and if the defendant took him at all, he must risk his soundness.   The agreement was, that the defendant was to pay for the slave the next Monday after the sale, when a bill of sale was to be given.   The complainant objected to delivery at that time, wishing to defer it until the money was paid, but at the instance of the defendant, acquiesced in his taking the slave.

A witness not connected with the parties speaks of conversations with the defendant, in which he spoke of his knowledge that the slave had previous to the purchase had fits, and his assertion that he would not have purchased but for the impression the slave had outgrown them.

A physician was examined to prove his attendance on the slave in 1839, when he was considered cured—the cause was supposed to be worms, or too rapid growth.

Several of the witnesses concur that the slave had not been afflicted since 1839, previous to the sale.

Another witness states the complainant called on him after the sale, and stated he wished a bill of sale drawn so as to express that if the slave should be afterwards afflicted with fits, the complainant was not to be bound.   Under the impression that this intention would be expressed thus, witness drew the bill of sale, which the complainant afterwards, on the 20th December, delivered to the defendant.

The chancellor decreed a perpetual injunction of the suit at law, and directed the costs to be paid by the defendant.

This decree is assigned as error.

ROBINSON, for the plaintiff in error, insisted—

1. That the conversation between the parties, testified by the sons of the complainant, was previous to the contract of sale, and must be considered as merged in the bill of sale. [3 Cowan & Hill's Notes, 1466-7.]

2. But if the evidence can be looked to as showing the contract, then it is the attempt to show by *parol* an intention different from that evinced by the writing.   [6 Vesey, 334, note c;  4 Dess. 215;  Dufrene v. McDonald, Ibid, 209;

Dwight v. Pomroy, 17 Mass. 303; Wade v. Howard, 6 Pick. 492; Rich v. Jackson, 4 Bro. Ch. 514; Iddings v. Iddings, 7 S. & R. 111; Mann v. Mann, 1 John. Ch. 231.]

3. The testimony of the only reliable witness (he who speaks of drawing the bill of sale) shows that there was no such mistake as alledged, or if there was a mistake, it is of law and not of fact.   [Lyon v. Richmond, 2 John. Ch. 51.]

4. The proof of a mistake must be clear and satisfactory. [Gray v. Ward, 4 Blackf. 432; Harrington v. Harrington, 2 Howard, 720; Lyman v. United Ins. Co. 2 John. Ch. 630.]

Silas Parsons, contra, contended that the mistake was sufficiently made to appear, as the contract is proven to be different from that expressed in the bill of sale, and the reason is also given why that is in the form it is—a mistake of its legal effect by the person drawing it.   [1 Story's Eq. § 162; Thompson v. Vaughan, 2 Atk. 31; Bishop v. Church, 2 Vesey, 100; Ibid, 371; Thomas v. Frazer, 3 Ibid, 399; 1 Story Eq. 121; Ib. 128; O'Neal v. Teague, 8 Ala. R. 345.]

GOLDTHWAITE, J.—The reformation of written agreements, when, by mistake, they express more or less than the parties intended, is now a well established branch of equity jurisdiction, but if the proofs are doubtful and unsatisfactory, and the mistake is not entirely plain, equity will withhold relief on the ground that the written paper ought to be treated as a full and correct expression of the intent, until the contrary is established beyond reasonable controversy.   [1 Story's Eq. § 152, and cases there cited.]

If, as the counsel for the defendant supposes, the proof in this cause established the contract to be, that the complainant was to warrant the then condition of the slave, it would admit of serious question, whether his mistaken impression that such a contract would not cover a constitutional defect subsequently developed, would be admitted to qualify the legal import of his agreement; but as we understand the evidence, no such inference is warranted. · Those present when the sale was made, are positive and precise in declaring the contract was, the slave should not be warranted sound, and the reason was then given by the seller, why he would not

assume this obligation. The contract was then complete in all its terms, and nothing remained to be done by the purchaser than to pay the money, or by the seller, than to execute the bill of sale. If the proof had stopped at this point, it is possible there would be no sufficient explanation to account for the variance between the contract as agreed on, and that expressed by the receipt. There is no ground, however, to suppose the contract itself was afterwards varied by the parties, for the complainant himself caused the bill of sale to be prepared, and the testimony of the draftsmen is convincing that the warranty of soundness was inserted—not because there was any contract to that effect—but to guard the complainant against the precise difficulty which afterwards happened and which the bill of sale as drawn does not exclude. In our judgment, it is a case of mistake clearly within the rules previously stated, and the chancellor's decree is substantially correct, though it might properly have gone farther and decreed the cancellation of this clause of the warranty.

Decree affirmed.