## STONE, TRUSTEE, vs. HALE ET AL.

1. Where a father, intending to provide a support and maintenance for his daug'ter, then the wife of an improvident husband, instructs an attorney, so to draft a deed as to secure the property to her sole and separate use, which, however, by mistake or accident he fails to accomplish, a court of equity will reform the deed as against judgment creditors of the husband, who have caused executions to be levied on the property.
2 Equity will not impute laches to a party seeking the correction of an alleged mistake, until after its discovery.

17 557
112 088
114 580

17 557
119 345

3. Where the trustee named in a deed holds the naked legal title, without any beneficial interest in the property, the *cestui que trust* is the proper party to apply to a court of equity for the correction of an alleged mistake in the drawing of the deed; and a bill filed for that purpose by the trustee *alone*, is wanting in equity and should be dismissed.

Error to the Chancery Court of Wetumpka. Tried before the Hon. Wilie W. Mason.

The bill in this case, which was filed by the plaintiff against the defendants in error, alleges that Warren Stone, desiring to secure certain slaves and their increase for the support and maintenance of his daughter, Martha G. Hamilton, then the wife of John M. Hamilton, who was an improvident man, on the 21st of March 1837, employed H. W. Hilliard, Esq., an attorney at law, to draft a deed to the complainant for the said slaves, to be by him held in trust for the said Martha G. and her children; that he requested and instructed the said Hilliard so to draw the deed as to convey to the complainant the said slaves in trust for the sole and separate use of the said Martha G., during her life, and to her children at her death; that by mistake and accident the said attorney did not so draw the deed as to effect that purpose; that on the 16th of March 1846, the defendants caused an execution, issued on a judgment against the said John M. Hamilton, to be levied on the slaves, and that complainant, supposing that said deed spoke the intention of the donor and created a separate estate in Mrs. Hamilton, interposed a claim to the slaves; that the right of property was thereupon tried in the Circuit Court of Coosa county and a judgment rendered in his favor, but that said judgment was taken by writ of error to the Supreme Court and there reversed, said court deciding that said deed did not create a separate estate to the slaves in Mrs. Hamilton, but vested such an interest in said John M. Hamilton by virtue of his marital rights as was subject to be taken in execution for his debts; and that said cause is now pending in said Circuit Court, &c. The bill prays a reformation of the deed so as to make it speak the intention of the donor and in the meantime an injunction, &c. The chancellor dismissed the bill for want of equity, which is now assigned as error.

BUGBEE and BELSER, for the plaintiff:

1. The complainant is a proper party to the bill. But if he was not, a motion to dismiss does not bring up the question, and the practice in this particular is to amend.—Milligan v. Millege, 3 Cranch, 220; Gayle et al. v. Singleton, 1 Stew. 566; Brooks v. Harrison, 2 Ala. 209; Lavender v. Lee, 14 ib. 688; Beauchamp v. Handley et al. 1 B. Monroe, 139; Lyde v. Bank, 6 Gill & Johns. 425; Plowman v. McLean, 14 Ala. 171; Gills v. Frost, 4 ib. 730.

2. When a written instrument through mistake is made to express more or less than the parties to it intended, a court of equity will reform it upon clear and satisfactory proof.—Clopton v. Martin, 11 Ala. 187; O'Neal v. Teague, 8 Ala. 353; Paysant v. Ware, 1 ib. 170; Gillespie v. Moon, 2 Johns. Ch. 585; Godell v. Tweed, 15 Verm. 448; Wheaton v. Wheaton, 9 Conn. 96; Dunlap v. Stetson, 4 Mason, 414; Gar v. Dixon, Walker's Ch. 440; Brown v. Bonner, 8 Leigh, 1; Hunt v. Rousmanier, 1 Peters, 1; Ball v. Stone, 1 Sim. & Stu. 212.

3. And such mistakes will be rectified, even where *bona fide* creditors of the husband are concerned, in favor of the wife.— Lavender v. Lee, 14 Ala. 693; 1 Story Eq. Juris. 185, § 165; Ressellack v. Livingston, 4 Johns. Ch. 148; Champlin v. Layton, 18 Wend. 407; Alexander v. Newton, 2 Gratt. 266. *Bona fide* creditors are judgment creditors.—Thomason v. Scales et al. 12 Ala. 309.

4. And the lien acquired by the levy, in the case before the court, operates to the exclusion of interests arising subsequently to it, but must give way to prior claims and prior equities.— Thomas v. Davis, 6 Ala. 113; McMahan v. Green, 12 ib. 73-4; Ressellack v. Livingston, 4 Johns. Ch. 148; Champlin v. Layton, 18 Wend. 407; Meary v. Head, 1 Mason, 319.

5. A lapse of thirteen years between the execution of the deed and the date of the filing of the bill to reform it, *under the circumstances*, will not prevent the deed from being reformed so as to correspond with the original intent of the parties.—Gillespie v. Moon, 2 Johns. Ch. 601; East v. Thom, 3 P. Wms. 126; Wash v. Merill, 1 Day, 139.

6. In such a case the complainant would only be chargeable with laches, since he discovered the defect in the deed.—Stearns v. Paige, 1 Story, 204; 1 Story Eq. Ju. 72, § 64, n. a; Ib. 592.

7. The circumstances of the making of the deed may be looked to in determining on the mistake of the scrivener.—1 Story Eq. Juris. 185, § 162.

WHITE, for the defendants:

The bill should have been filed in the name of the trustee *and* the *cestui que trust*, or the *cestui que trust* should at least have been a party defendant. It may be that she did not wish the deed reformed.—Plowman & McLane v. Riddle, 14 Ala.

A court of equity has power to reform contracts, but is slow to exercise such authority, and will not do so to the prejudice of third persons. When equities are equal, the court witholds its aid.—1 Story Eq. §§ 139, 176. Hale's lien under the deed had attached and cannot be divested upon principles of equity in favor of the trustee or indeed of the *cestui que trust*, if she was a party to the bill.

Equity will not interfere after judgment at law, unless the party can impeach the justice of the judgment by fact or on grounds of which he could have availed himself but was prevented from so doing by fraud, accident, or the act of the opposite party, unmixed with fault or negligence on his part.— French v. Garner and others, 7 Porter, 549.

The ground of jurisdiction is not stated with sufficient certainty. By mistake or accident, it is alleged, the deed was drawn as it is. Whose mistake was it, or by what accident did it so occur? The proof in such case must be clear and satisfactory, and the allegation must be such as admits of such proof.— Clopton v. Martin, 11 Ala. 190; O'Neal v. Teague, 8 ib. 345; 1 Story Eq. § 152, and cases cited.; Ib. § 157.

The notion of a mistake such as entitles a party to relief, seems to involve the having been misled by false appearances, and does not include an erroneous impression spontaneously taken, not from any deceptive evidence, but merely the suggestion of the party's own mind.—Gilchrist & King v. Martin & West, 1 Bailey's Eq. Rep. 492.

If there was any mistake, it was a mistake of law, and in the absence of fraud will not be relieved against, unless the mistake be so gross as to induce the belief that undue advantage was taken.—Haden v. Ware, 15 Ala. 149; 18 Wend. 407; 6 Paige, 189; 1 Johns. Ch. R. 512. And this is especially true in com-

promise of doubtful rights, and in *all cases of family arrangements.*—1 Story Eq. § 137; Hunt v. Rousmanier, 1 Peters, 1-15; Bank of United States v. Daniel, 12 Peters, 32-55-6.

That this is a mistake of law, is evident from the allegation that complainant supposed the deed to convey a separate estate to the wife, until the decision of this court to the contrary.

Equity gives relief to the vigilant, and not to the negligent.— 1 Story Eq. § 146, and note 2.

In all cases of relief, by aiding or correcting mistakes in the execution of an instrument, the party asking relief must stand upon some equity *superior* to that of the party against whom he asks it.—Story Eq. § 176. And when a *bona fide* purchaser for a valuable consideration without notice, is concerned, equity will not interfere.—Ib. § 139. The judgment and execution creditor, whose right has vested by a levy on the property, stands in a position as favorable as a *bona fide* purchaser.—Daniel v. Sorrells, 9 Ala.

Chancery will not deprive a party of a legal advantage fairly obtained, when in *foro conscientiæ* he has a right to retain the money.—Lee & Norton v. Insurance Co. of Columbus, 2 Ala. 21.

CHILTON, J.—Two questions arise in this case: First— Does the bill present such a state of facts as will justify the interference of a court of equity to reform the deed? Second— Whether the bill is filed by the proper party? It is obvious the investigation of the last point will be rendered unnecessary, should we determine that the court cannot, under the circumstances of the case, entertain jurisdiction of the bill.

1. Mistakes are usually considered by authors, of two kinds, mistakes of law and mistakes of fact. In respect to the first, mistakes in matter of law, it is said they cannot in general be relieved either at law or in equity, it being a maxim which is alike applicable to both courts, *Ignorantia legis neminem excusat.*—1 Story's Eq. (4th ed.) 123, §§ 110-11, and authorities cited in note 2. The ground upon which this maxim is founded, as suggested by Lord Ellenborough in Bilbie v. Lamby, 2 East, 469, and adopted by Judge Story, is, that were the law otherwise, there is no saying to what extent the excuse of ignorance might not be carried, and that nothing would be more liable to abuse, or contribute more to embarrassing litigation, than to per-

mit parties to overhaul their most solemn contracts and to reclaim property upon the pretence that they were ignorant of the law operating on their title.—1 Story's Eq. § 111. But although the rule is thus broadly laid down, "that ignorance of the law shall not affect agreements, nor excuse from the legal consequences of particular acts," (ib.; 1 Fonb. Eq. B. 1, ch. 2, § 7, note v,) still there is a numerous class of cases which have been solemnly adjudged not to fall within its influence, as being without its reason and spirit. It would subserve no good purpose to swell this opinion with an examination of the great number of cases which have been decided, bearing upon this question, and which, from their number as well as contrariety, serve rather to bewilder than enlighten the inquirer for a stable and correct principle of decision. We will content ourselves by refering to the general principles of equity applicable to the case before us.

The desire to suppress frauds, and to promote good faith and confidence in the formation of contracts, has induced the courts of equity from an early day to reform written instruments so as to make them speak the true intention of the parties. "Courts of equity," says Judge Story, " have not hesitated to entertain jurisdiction to reform all contracts where a fraudulent suppression, omission, or insertion of a material stipulation exists, notwithstanding to some extent it breaks in upon the uniformity of the rule as to the exclusion of parol evidence to vary or control contracts; wisely deeming such cases to be a proper exception to the rule, and proving its general soundness." But coming to the principle which we conceive embraces the case before us, the same learned commentator says—"It is upon the same ground that equity interferes in cases of written agreements where there has been an *innocent omission* or insertion of a material stipulation, contrary to the intention of both parties, and under a mutual mistake. To allow it to prevail in such case would be to work a surprise or fraud on both parties, and certainly upon the one who is the sufferer." The above quotation is so apposite to the case at bar as to require no comment.—1 Story's Eq. §§ 153-4-5, and authorities cited in note 2, p. 176, (4th edit.) The case before us is briefly this: A father, having a daughter, unprovided for and whose husband was improvident, determines to vest some property in a trustee to her sole and separate use for life, as the means for her support &c., remainder to her

children, &c. Instructions are given to an attorney to draw the deed, but through his omission, the words "to her sole and separate use," or equivalent expressions, are left out—by which mistake of the attorney, the property is vested in the improvident husband for life, if the deed be not reformed, and as such is now about to be wrested from its appropriate destination to pay the debts of the husband. Thus by the mistake, the whole object of the gift for life, as well as the intention of the donor in making it and the donee in receiving it is defeated. The creditors are insisting upon this mistake in framing the deed to subject the property to their executions against the husband of the donee, and if allowed to avail themselves of this accidental *legal* advantage, the boon of the father, designed for the comfort and support of his child, is to be enjoyed by strangers to his blood. To hold that they may do so, would be, in the language of Judge Story, "to allow an act, originating in innocence, to operate ultimately as a fraud, by enabling the party who receives the benefit of the mistake to resist the claims of justice under the shelter of a rule framed to promote it."—1 Story's E. § 155. Chancellor Kent, in Gillespie v. Moon, 2 Johns. Ch. Rep. 596, a case not unlike the present in one aspect, said—"It would be a great defect in what Lord Eldon termed the moral jurisdiction of the court, if there was no relief for such a case."— Townshend v. Stangroom, 6 Ves. 236-S; Hunkle v. The Royal Exchange Ins. Co., 1 Ves. 317; Langley v. Brown, 2 Atk. 31. In Clopton v. Martin, 11 Ala. 187, the vendor procured a friend to write a bill of sale to a slave, but which, by the agreement between the vendor and vendee, was not to contain a covenant of warranty as to soundness, the slave sold having before that time been afflicted with fits; but in the bill of sale was inserted, "and said negro man I warrant to be sound at this time."—Held, that the vendor was relievable in equity from the covenant, and a perpetual injunction was granted against the suit of the vendee upon it. See also Oneal v. Teague, 8 Ala. 345, where the court throw out a similar intimation. Our conclusion is, that taking the allegations of the bill as to the fact of mistake as true, which we must do upon a motion to dismiss, it is competent for the Chancery Court to rectify the mistake by reforming the deed so as to make it truly speak the intention of the donor. This equity attaches to the property contemporaneously with the exe-

cution of the deed, and is not defeated by the rendition of the judgment and levy of execution on the part of the husband's creditors. In Price v. Brassfield, 9 Ala. 573, the question was left open, whether lands omitted out of the contract of sale by mistake, which is corrected by a court of chancery, were bound by the lien of a judgment obtained against the vendor after the contract was made, but before its correction. Ormond, J., in delivering the opinion, said, that if it was necessary to decide the point, the court would be inclined to think that the omission to insert in the bond for title a part of the land actually sold would not enable a judgment creditor to claim it in virtue of his lien, whatever the rule might be as to *bona fide* purchasers from the vendor without notice. Judge Story lays it down as the rule, that courts of equity will interfere as against judgment creditors and correct mistakes, though not as against *bona fide* purchasers without notice.—1 Story's Eq. § 165. If the creditor in this case can be said to have an equity at all, it is certainly junior to that of the *cestui que trust*, and must therefore be postponed, upon the maxim, "*qui prior est in tempore portior est in jure.*" But the creditors stand in no better condition than their judgment debtor. The rendition of their judgment and levy of execution vest in the defendant in execution no greater title than he had before; and what was that title? The answer is, conceding, as we have said, the facts of the bill to be true, he had a *mere* legal title in the slaves for the life of his wife, occasioned by a clerical misprision, but in the contemplation of the Chancery Court, not the semblance of equity. The *cestui que trust* then does stand upon an equity superior to the creditors, and consequently the court may become active in her relief.—It will be observed that in this case the creditors alone resist the reformation of the instrument.

But it is said the application comes too late. We do not think so. Many cases may be found in which similar relief was granted after the lapse of a longer period. The case of Gillespie v. Moon, *supra*, may furnish an example. Besides, it is a fair inference from the allegations of the bill, that the mistake was not discovered until pointed out by the decision of this court—(Hale et al. v. Stone, 14 Ala. 803)—and laches could not in equity be attributed to the party before the discovery of the mistake. In equity, the statute of limitations begins to run

from that period.—2 Story's Eq. (4th ed.) § 1521, a,—citing Brooksbank v. Smith, 2 Young & Coll. 58.

We come to the only remaining point, whether the bill was properly dismissed for want of proper parties. When the bill contains equity, the question as to parties could not come up on a motion to dismiss, for the plaintiff must have an opportunity to perfect his bill, which is disallowed him if it be dismissed. Hence, in such cases, if the objection of the want of proper parties appear on the face of the bill, the practice is to demur.

But the case before us goes beyond the mere question of proper parties, and falls within another principle of equity, namely, that the complainant must show by the allegations in his bill that he is entitled to the relief which he seeks.—McKinley v. Irvine, 13 Ala. 681, and authorities there cited. Does the complainant in the case before us do this? He is a dry trustee of the legal title, holding it for the sole purpose of conveying it to the remainder-men upon the termination of the life estate in the wife—the conduit through which the title is to pass. He has no beneficial interest whatever in the property, and it is not for him to say to the donor, you have given too little or too much, or have made a mistake in your directions as to what you have given. The wife, assuming the allegations of the bill to be true, is in equity the sole owner for life of the property; she is the party who must by her next friend become the mover for the reformation of the deed, and the trustee, who is merely the depository of the dry legal title, may be made a party either complainant or defendant. But he has no equity whatever—no title to relief upon his own allegation, but only upon the allegations of the wife. In this case, the wife is not made a party at all, and as she is the only person who is entitled to invoke the aid of the Chancery Court to correct the mistake, it is very clear upon principle that the trustee alone has no power whatever to move in the matter; he shows no equity in his bill, and therefore it was properly dismissed for that reason. The chancellor, we think, correctly decided the case, but for a wrong reason.

Let the decree be affirmed.