LARKINS ET AL. *vs.* BIDDLE ET AL.

1. A court of equity will not reform an instrument which speaks the true agreement between the parties, although they may have mistaken the legal consequences of the agreement.

2. But where the instrument does not express the agreement between the parties, from the ignorance or want of skill of the draftsman, or from any other cause, equity will reform it.

3. A deed of gift drawn by the grantor himself, which, by reason of his ignorance of the law, does not express his intention, may be reformed in equity.

4. Where the general right claimed by the bill is the same as to all the defendants, an objection for multifariousness, on the ground that the defendants have distinct and separate interests, cannot be sustained.

5. A bill filed by the donee, asking the reformation of a deed of gift, which, it is alleged, was intended to secure the property thereby conveyed to her sole and separate use, free from the debts of her husband, is not multifarious, because it joins as defendants certain judgment creditors of her husband, who were about to levy their executions on the property, and her husband's administrator who was about to bring suit against her for the property.

6. An amendment to a bill can only be allowed when the bill is defective in proper parties, or in the prayer for relief, or in the omission or mistake of some fact connected with the substance of the case.

7. Where the amendment is inconsistent with the original bill, and makes a new case, a demurrer will lie to it.

8. Where a bill was filed for the reformation of a deed of gift, and the original bill alleged that it was the intention of the donor, at the time of the execution of the deed, to settle the slaves thereby conveyed *to the sole and separate use of the complainant, free from the debts of her husband ;* and the amended bill alleged that it was the donor's intention, at the time of the execution of the deed, to secure said slaves *to the sole and separate use of the complainant during her life, and at her death to her children, Held:*
   That the amendment made a new and different case from the original bill.

ERROR to the Chancery Court of Lowndes.

Tried before the Hon. J. W. LESESNE.

The complainant, Eliza Larkins, filed her original bill to reform a deed of gift, which was executed and drawn by her father, James Maul, on the ground that it was his intention to settle certain slaves, specified in said deed, to her sole and separate use, free from the debts of her husband, which intention was not expressed in the deed, in consequence of the ignorance and want of skill in the draftsman. Certain judgment creditors of the husband of the complainant, who were

about to levy their executions on said slaves, and the administrator of the husband, who was about to commence suit for them, were made defendants; and the prayer of the bill was, for an injunction as to such creditors and the administrator, and the reformation of the deed according to the intention of the grantor. A demurrer was filed to the original bill, for want of equity and multifariousness. An amended bill was subsequently filed, which charges that, in making the deed, it was the intention of the grantor to have secured the slaves to the separate use of the said Eliza Larkins during her life, and at her death to her children, to which amended bill a demurrer was also filed. On the hearing, a decree was rendered dismissing the bill, from which the complainants prosecuted a writ of error.

GEO. W. STONE, for plaintiff in error:

1. Whenever, by mistake of the conveyancer or scrivener, any written instrument fails to speak the intention of the parties, chancery will reform it. Lavender v. Lee, 14 Ala. 693; Stone v. Hale, 17 Ala. 557; 1 Sto. Eq. Jur., § 165; 2 Roper on Husband and Wife, 92–156, and note o; Simpson v. Vaughn, 2 Atk. 31, case 21.

2. If the grantor himself draws the deed, it does not vary the case. Simpson v. Vaughn.

3. Such instrument will be reformed against the claims of creditors. Only *bona fide* purchasers can resist the reformation. Stone v. Hale, 17 Ala. 563–4; 1 Sto. Eq. Jur., § 165.

5. The declarations of Mr. Larkins, while in possession of the property, showing the nature of his possession, are competent proof. Bliss v. Winston, 1 Ala. 344; Oden v. Stubblefield, 4 Ala. 40; McBride v. Thompson, 8 Ala. 652; 10 Ala. 355.

6. On the subject of multifariousness, the court can lay down no definite rule. The unity of the purposes of the bill, and interests involved, must in general determine this question. In this case, the bill has but one purpose—the reformation of the deed; and all the defendants are interested, because they were seeking to condemn the property. Injunction against each was necessary. Kennedy's Heirs v. Kennedy's Heirs, 2 Ala. 572; McCartney v. Calhoun, 11 Ala. 110;

Brinkerhoff v. Brown, 6 Johns. Ch. 139, 157; Bank v. Walker, 7 Ala. 949–950. This case is wholly unlike those of Meacham v. Williams, 9 Ala. 842, and McIntosh v. Alexander, 16 Ala. 87. In those cases, interests wholly distinct were attempted to be united.

7. As to the amendment, it was agreed to, and stands in the same condition as if ordered by the Chancellor. In such case, the revising court will not reverse. Cumming's Heirs v. Gill's Heirs, 6 Ala. 562. Moreover, it would be error to dismiss for want of proper parties, unless the complainant, when the objection was pointed out, refused to amend. If the bill had been dismissed on this ground, this court would reverse and send it back, that proper parties might be made. A fortiori, it could not be error to amend in the court below. 12 Ala. 369; 16 Ala. 233; Sto. Eq. Pl., § 74.

8. The court permits amendments as to parties and the prayer of the bill, more readily than in any other respect. Sto. Eq. Pl. §§ 236, 883–4, and latter clause of 887; 1 Dan. Ch. Pr. 458. So the court is more indulgent when the rights of infants are involved.

9. It is allowable to strike out a party complainant, and make him a defendant, on giving security for costs. 1 Dan. Ch. Pr. 458. This condition is imposed, as I understand it, because the number of persons liable for costs is thereby reduced. By converting a defendant into a complainant, the number is increased, and the costs made more secure.

J. M. BOLING, for defendant in error:

The same general rule prevails in equity, as at law, that parol evidence is not admissible to contradict, qualify, extend, or vary written instruments. 2 Sto. Eq. Jur. § 1531.

Loose and general declarations of intention, by one member of a family, of holding property in trust for the other members, are not sufficient for the deduction of a trust which equity will recognize and enforce. Steere et al. v. Steere et al., 5 John. Ch. 1; Fonb. Eq. B. 2, ch. 2, § 6, note c. Such evidence is received with great caution. Id.

Where an agreement in writing is executed, it were not only against the express provisions of the statute of frauds, but also against the policy of the common law, to allow of

parol evidence, for the purpose of adding to, or varying the terms of the agreement. Fonb. Eq. B. 1, ch. 3, § 11. note o, and authorities there collected.

The general rule is, that parol evidence is admissible to explain, but not to contradict, alter, add to, or diminish a written instrument. Ib., and authorities there cited.

To the general rule, however, there are several exceptions; as where a declaration showing the design is made before the deed is executed, in cases of fraud and trusts, though no trust was declared in writing, and plain mistake in drawing the instrument. But the proof must be clear, strong and satisfactory; for the courts are deeply impressed with the danger to individuals to be apprehended from perjury, and to the community at large, by the insecurity of paper title. Id., and authorities cited; 1 Sto. Eq. Jur., § 152 to § 168. Relief will not be granted where the evidence is loose, equivocal or contradictory, or it is in its texture open to doubt, or to opposing presumption. Id., § 157.

With respect to evidence of declarations prior to the making of the deed, unless in the shape of instructions for such purpose, they are obviously entitled to less respect than declarations made at the time of, or subsequent to, the making of the deed; for whatever might be the intention at the time of the declarations, it might have been varied or been wholly abandoned, at the time of making the deed. The greatest circumspection is therefore due, in receiving evidence of declarations prior to the making of the deed, unless they were intended as directions or instructions for that purpose. Fon. Eq. B. 2, ch. 5, § 3, note 1, and authorities there collected.

See Cowen & Hill's notes to Phillips' Ev., note 948, p. 1383, et seq., where the subject of reforming deeds is fully discussed, and the authorities collected.

Our court in no instance has gone to the extent desired in this case in reforming instruments. Paysant v. Ware & Barringer et al., 1 Ala. 170; O'Neal v. Teague & Teague, 8 Ala. 345; Clopton v. Martin, 11 Ala. 190; Stone, trustee, v. Hale et al., 17 Ala. 557. This court has gone as far in this respect as the adjudications authorize.

This case seeks to set aside the deed, and to enforce it when it is reformed and varied by the parol evidence. In

many cases the English Courts of Chancery have refused relief in such cases. 1 Stor. Eq. Jur., § 161, and authorities referred to. Chancellor Kent, however, holds differently. Ib.

GOLDTHWAITE, J.—The objections to the original bill, for want of equity and multifariousness, cannot prevail. The object of the bill is, the reformation of a deed of gift, drawn by the grantor himself, but which, from his ignorance of the law, was so unskillfully drawn as not to express his intention. The general rule is, that mistakes of law cannot be relieved in equity, and while the policy and correctness of the rule are conceded, there is frequently found some difficulty in its application. There can, we apprehend, be no doubt, that where the instrument speaks the true agreement between the parties, equity cannot reform it, because one or both of them may have mistaken its legal consequences. There is in such a case nothing for equity to lay hold of. The parties have made their own contract, and a court of equity cannot change it. Hunt v. Rousmariere, 1 Pet. 1. Thus, if, in an agreement for the purchase of land, it was stipulated that the vendor should make certain warranties, a mistake as to the legal consequences of such warranties would not authorize an application to a court of chancery for relief, however clearly the mistake was made out. But where the instrument does not express the agreement of the parties, from ignorance or want of skill on the part of the draftsman, or any other cause, it is competent for equity to correct the mistake. Hunt v. Rousmaniere, *supra.* Thus, if, in the case of the warranties as before stated, the deed was drawn by the one party, and accepted by the other, under the impression that the language of the instrument was sufficient to create the warranties stipulated for, when the terms used were not in law sufficient for that purpose, equity would in that case reform the deed so as to express the true agreement. Although the error occurred through a mistake or ignorance of the law, the error itself might be more properly considered as a mistake of fact. This principle applies in its full force to the case under consideration, and is sustained by the decisions of this court. Clopton v. Martin, 11 Ala. 187; Stone v. Hale, 17 Ala. 557.

The objection on the ground of multifariousness cannot be

sustained, for the reason that, although the defendants have separate and distinct rights, yet the object is the reformation of the deed, and the general right claimed by the bill is equally applicable to all the defendants, and such being the case, a demurrer will not hold. Mitford Eq. Pl. by Jeremy, 181–2, and notes a and b; Stor. Eq. Pl., § 530, et seq.

To the amended bill, however, there was good ground of demurrer. The bill, as originally filed, charged that it was the intention of James Maul, in making the conveyance which it is the object of the bill to reform, to settle the slaves specified therein, to the sole and separate use of the complainant, without being subject to any debts of her husband; and the prayer is, to reform it so as to give effect to the intention of the grantor. The amended bill charges that, at the time of the execution of the conveyance, it was the intention of James Maul, to secure the slaves mentioned therein to the sole and separate use of the complainant during her life, and at her death to her children. It is clear, that the amendment is inconsistent with, and makes a new case from the original bill; and the rule is, that amendments can only be granted, when the bill is found deficient in the proper parties, in the prayer for relief, or in the omission or mistake of some fact connected with the substance of the case. Lyon v. Tallmadge, 1 John. Ch. Rep. 184; Verplanck v. Mercantile Ins. Co., 1 Ed. 46. The amendment here makes a new case, because it sets up a different agreement from that charged in the original bill. McKinley v. Irvine, 13 Ala. 181.

The decree of the Chancellor dismissing the bill, must be reversed with costs, and a decree rendered dismissing the bill without prejudice.