SAMUEL W. HAYES, CHIEF JUSTICE.
MATTHEW J. KANE, VICE CHIEF JUSTICE.
R. L. WILLIAMS,
JESSE J. DUNN, } JUSTICES.
JOHN B. TURNER,

---

### GROSS CONST. CO. v. HALES *et al.*

No. 1339.   Opinion Filed January 16, 1912.

Rehearing Denied March 9, 1913.

(129 Pac. 28.)

1. PLEADING—Amendment—Cross-Petition. Where a cross-petition alleged that by written contract plaintiff had engaged to pay for certain party walls, it was not error to permit an amendment during the trial alleging that the parties entered into a contract by which plaintiff agreed to pay for certain party walls, but that by mutual mistake the written contract did not express the real agreement, and praying for reformation of the written contract, plaintiff not claiming surprise, and it appearing that all persons who knew anything about the transaction testified in the case, and it was not error to admit evidence in support of the amendment.

2. SAME. Such an amendment did not change substantially the "claim or defense" which was, both before and after the amendment, that plaintiff had agreed to pay for the party walls.

3.  **PARTY WALLS—Contracts—Evidence.** When plaintiff took contracts to erect at the same time buildings on seven lots belonging to various persons, two of which lots belonged to defendant, and where the contract with defendant provided that "this contract will include all walls and party walls, which are to be paid for by the contractor,". and the defendant testified that plaintiff agreed to pay for all party walls for which defendant was liable, and defendant is corroborated in some particulars by other witnesses, the evidence was sufficient to sustain a finding that plaintiff agreed to pay for a party wall on one of the buildings on the east side of the block not adjoining defendant's building, but for the cost of which he was liable, though plaintiff's manager denies there was such an agreement.

4.  **REFORMATION OF INSTRUMENTS—Mistake.** Where, by a mistake as to the effect of the language used, a writing does not truly express the contract, equity will relieve.

(Syllabus by Rosser, C.)

*Error from District Court, Oklahoma County;*
*R. H. Loofbourrow, Assigned Judge.*

Action by the Gross Construction Company against George H. Hales and others. Judgment for defendants, and plaintiff brings error. Affirmed.

*Everest, Smith & Campbell,* for plaintiff in error.
*Flynn, Chambers & Lowe* and *W. F. Wilson,* for defendant in error George H. Hales.

Opinion by ROSSER, C. This suit was brought by the Gross Construction Company against George H. Hales to recover a judgment for the balance claimed to be due it upon a certain building contract, for the construction of a building upon lots 10 and 11, block 7, in Oklahoma City, amounting, as alleged, to $3,192.41. Hirsch and Kauffman were made parties because they had become interested in the property since the transaction in controversy. The pleadings, exhibits thereto, and preliminary motions in the case cover 60 pages of the record. Defendant filed an answer and cross-petition. The answer was a general denial, but in the trial it was practically admitted that the plaintiff and defendant entered into the contract sued upon, and the only matter in controversy between them was as

to a certain credit, which the defendant claims he was entitled to on account of certain party walls, for which he claims the plaintiff agreed to pay. The defendant, in his cross-petition, gave a long and complicated description of the lots which had been owned by him, and upon which party walls had been built, certain fractional parts of which, set out minutely in the cross-petition, the defendant had originally been bound to pay for. The cross-petition then alleged that plaintiff was to pay the amount defendant owed for party walls out of the sum agreed to be paid it on the building contract, and that plaintiff's agreement to pay was contained in the written building contract.

The building contract was upon a form used by the National Association of Architects and Builders, and into the form was written the following: "This contract will include all walls and party walls, which are to be paid for by the contractor." The plans and specifications, according to which the building was constructed, were not produced at the trial. The defendant, after persistent effort to show by parol testimony what was meant by the provisions in the contract, that it was to "include all walls and party walls, which were to be paid for by the contractor," offered to amend his cross-petition by alleging that he was induced to sign the contract through fraudulent representations made to him by plaintiff with reference to the construction that would be placed upon the contract which he signed, and that he relied upon the statements made by the plaintiff, and he believed them to be true, and signed the contract, relying upon such representations. The court refused to permit the amendment. The defendant then undertook to prove that the contract to pay for the party walls was made by the plaintiff separate and distinct from the written contract, and that there was a valid and binding agreement made between the plaintiff and defendant by which the plaintiff agreed to pay defendant's portion of the price of the construction of the wall on the east side of lot 16. When this evidence was excluded by the court, the defendant asked leave to amend his answer to the effect that the contract sued on did not express the real agreement between

the parties, and that the failure to so express said agreement between the parties was a mutual mistake upon the part of the plaintiff and defendant Hales, and that it was the agreement of the parties that plaintiff should pay for that portion of the wall on the east side of lot 16, block 7, of Oklahoma City, or the price of the construction of that wall that defendant, by former agreement entered into with one S. M. Gloyd, had agreed to pay, and also that the same agreement was entered into with reference to the plaintiff paying for that portion of the party wall on the west side of lot 10 that defendant was bound to pay, and asked that the agreement be reformed to state what the actual understanding and agreement of the parties was. The court permitted this amendment, and the trial then proceeded, and there was a verdict and judgment reducing the plaintiff's claim to the extent of the amount claimed by the defendant for the party wall.

The defendant testified that before the contract was signed the plaintiff agreed to pay for half of "Sipes' wall," and "Will Hales' wall, and also the partnership walls on all the rest of the building." He said that after he had this conversation with the plaintiff that the clause, "This contract will include all walls and party walls, which are to be paid for by the contractor," was written into the contract. And then stated that he had a talk with the plaintiff's manager as to what this meant, and said:

"He (meaning plaintiff) told me he would pay for the east wall, Mr. Gloyd's, and all the party walls. That is the reason that I had it put in that way. I had signed a contract with Mr. Gloyd, and Mr. Gross knew all about it. When we talked this over, Mr. Gross agreed to pay for all the walls for this contract, in this contract."

Then the examination proceeds as follows:

"Q. Did you tell him that the clause intended he should pay for all these walls in this contract? A. I told him that he would have to agree, before I would sign this contract, he would pay for all the walls, Jasper Sipes', W. T. Hales', Gloyd's

wall, and Heinrich's wall, and his own wall, and he agreed to and did. That was the conversation."

Defendant was corroborated to a certain extent by the witness Heinrich. It also appears that plaintiff paid for some of the party walls and gave defendant credit on his account for $550.50 that defendant had paid on the Sipes' wall.

The grounds urged by plaintiff for a reversal of this case are reducible to two heads: First, that the court erred in permitting the defendant to amend his answer so as to allege that through mistake the contract failed to express the real intention of the parties. Second, that the evidence was not sufficient to support the allegations of the answer as amended.

Plaintiff's position is that the amendment permitted was inconsistent wih the allegations of the original cross-petition, and that because of its inconsistency the amendment should not have been allowed, and that proof of the allegations of the amendment should not have been allowed.

The amendment, and evidence in its support, was properly received. The fourth paragraph of the cross-petition, on which the parties went to trial, alleged that the building contract provided that the plaintiff should pay for all the walls and party walls that the defendant had been liable for. When defendant was not permitted to show by oral testimony that the provision in the written contract, "This contract will include all walls and party walls, which are to be paid for by the contractor," meant that plaintiff was to pay for the walls for which defendant had originally been liable, he amended by alleging that the contract did not express the real agreement, and that its failure to express the real agreement was a mutual mistake of the parties, and that the real agreement was that plaintiff should pay for the walls. This was not inconsistent with the cross-petition as it stood before the amendment was made. Section 5679, Comp. Laws 1909, is as follows:

"The court, may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process or proceeding by adding or striking out the

name of any party or correcting a mistake in the name of a party or a mistake in any other respect, or by inserting other allegations material to the case, or conform the pleading or proceeding to the facts proved, when such amendment does not change substantially the claim or defense; and when any proceeding fails to conform, in any respect, to the provisions of this code, the court may permit the same to be made conformable thereto by amendment."

And under this section it has been held that the form of action may be changed so long as the amendment does not "change substantially the claim or defense." *Fort Produce Co. v. S. W. Grain & Produce Co.,* 26 Okla. 13, 108 Pac. 386; *Culp v. Steere,* 47 Kan. 746, 28 Pac. 987; *Stevens v. Matthewson,* 45 Kan. 594, 26 Pac. 38. The claim or defense was that plaintiff had agreed to pay for the walls and had not done so. The amendment only related to the evidence of the promise. The defendant alleged that plaintiff had agreed to pay for the walls, and that the agreement was embodied in the written contract. The amendment, in effect, was that they agreed, but that the written contract failed to embody the agreement. The plaintiff did not claim surprise or attempt to show that it was not prepared to meet the issue. The matter of permitting amendments is largely within the discretion of the trial court. *Kuchler v. Weaver,* 23 Okla. 420, 100 Pac. 915, 18 Ann. Cas. 462; *Alcorn v. Dennis,* 25 Okla. 135, 105 Pac. 1012, and cases cited therein; *Trower v. Roberts,* 30 Okla. 215, 120 Pac. 617. It cannot be questioned that the matters pleaded in the amendment could have been proven if originally contained in the cross-petition, and plaintiff not claiming to have been surprised, and it appearing that all witnesses who knew anything about the transaction testified at the trial, the case should not be reversed because of the amendment.

Plaintiff's position that the evidence is not sufficient to support the verdict is not tenable. The evidence of the defendant supported as it was by the witness Heinrich, and the circumstances in the case, was ample to support the findings. The plaintiff was building on all the seven lots at one time, and the

defendant made the agreement to pay him $28,000.   It is a very reasonable conclusion that he would arrange with the contractor for a lump sum to cover all he would have to pay with reference to the erection of all the buildings, and this view is supported by the words written into the contract that plaintiff would pay for "all walls," etc.

The case of *McNinch v. Northwestern Thresher Co.*, 23 Okla. 386, 100 Pac. 524, 138 Am. St. Rep. 803, is not in conflict with this view.  In that case the defendant claimed that the contract sued on was fraudulently written in different terms to those agreed on by the parties, and the court held that merely representing to a man in possession of his faculties and able to read that a contract contained something different to what it actually contained was not such fraud as would void the contract.   This rule is supported by all the authorities.

But in this case the theory of the defendant was that both parties understood the contract, and that, by mistake as to the effect of the language used, the writing did not truly express the contract.  In such cases equity will relieve.  Pomeroy's Eq. Juris., at section 845, after referring to a previous section, states the rule as follows:

"If, on the other hand, after making an agreement, in the process of reducing it to a written form, the instrument, *by means of a mistake of law,* fails to express the contract which the parties actually entered into, equity will interfere with the appropriate relief, either by way of its enforcement, or by cancellation, or by reformation, to the same extent as if the failure of the. writing to express the real contract was caused by a mistake of fact.   In this instance there is not a mistake as to the legal import of the *contract actually made,* but the mistake of law prevents the real contract·from being embodied in the written instrument.   In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmatively or defensively, although the failure may `have resulted from a mistake as to the legal meaning and operation of the terms of language employed in the writing.  Among the ordinary examples of such errors are those as to the legal ef-

fect of a description of the subject-matter, and as to the import of technical words and phrases; but the rule is not conformed to these instances." (Italics ours.)

This rule is supported by the following authorities: *Hunt v. Rousmainer,* 8 Wheat. (U. S.) 174, 5 L. Ed. 589, opinion by Marshall; *Ivinson v. Hutton,* 98 U. S. 79, 25 L. Ed. 66; *Pitcher v. Hennessey,* 48 N. Y. 415; *Lanning v. Carpenter,* 48 N. Y. 408; *Maher v. Insurance Co.,* 67 N. Y. 283; *O'Donnell v. Harmon,* 3 Daly (N. Y.) 424; *Gillespie v. Moon,* 2 Johns. Ch. (N. Y.) 585, 7 Am. Dec. 559; *Canedy v. Marcey,* 13 Gray (Mass.) 373, opinion by Shaw; *Stedwell v. Anderson,* 21 Conn. 139; *Huss v. Morris,* 63 Pa. 367, opinion by Sharswood; *Cooke v. Husbands,* 11 Md. 492; *Larkins v. Biddle,* 21 Ala. 252; *Stone v. Hale,* 17 Ala. 557, 52 Am. Dec. 185; *Clopton v. Martin,* 11 Ala. 187; *McNaughten v. Partridge,* 11 Ohio, 223, 38 Am. Dec. 731; *Smith v. Jordon,* 13 Minn. 264 (Gil. 246) 97 Am. Dec. 232; *Wall v. Meilke,* 89 Minn. 232, 94 N. W. 688; *Sparks v. Pittman,* 51 Miss. 511; *Stockbridge Iron Co. v. Hudson Iron Co.,* 107 Mass. 290; *Oliver v. Mutual Com. Marine Ins. Co.,* 2 Curt. 277, Fed. Cas. No. 10,498; *Lansing v. Commercial Union Ins. Co.,* 4 Neb. (Unof.) 140, 93 N. W. 756; *Dinwiddie v. Self,* 145 Ill. 290, 33 N. E. 892; *Lee v. Percival,* 85 Iowa, 639, 52 N. W. 543; *Hausbrandt v. Hofler,* 117 Iowa, 103, 90 N. W. 494, 94 Am. St. Rep. 289; *Corrigan v. Tiernay,* 100 Mo. 276, 13 S. W. 401; *Richmond v. Ogden St. Ry. Co.,* 44 Ore. 48, 74 Pac. 333; *Ryder v. Ryder,* 19 R. I. 188, 32 Atl. 919; *Citizens' Nat. Bank v. Judy,* 146 Ind. 322, 43 N. E. 259; *Spring v. Harven,* 56 N. C. 96. Many other cases might be cited sustaining the proposition, but it is not necessary to cite any other, except the case of *Farmers' & Merchants' National Bank v. Hoyt,* 29 Okla. 772, 120 Pac. 264.

But plaintiff contends that, though defendant may have been mistaken as to the terms, he cannot have relief because plaintiff understood the effect of the language used, and cautioned the witness Heinrich not to explain to defendant its true effect. But if they made the contract as claimed in the amended

answer, then, for the purpose of preparing it in written form, defendant was a mere draughtsman.

"Parties to an agreement may be mistaken as to some material fact connected therewith which formed the consideration thereof or inducement thereto, on the one side or the other, or they may simply make a mistake in reducing their agreement to writing. In the former case, before the agreement can be reformed, it must be shown that the mistake is one of fact, and mutual; in the latter case it may be a mistake of the draftsman, or one party only, and it may be a mistake of law or fact. Equity interferes in such a case, to compel the parties to execute the agreement which they have actually made." (*Pitcher v. Hennessey,* 48 N. Y. 415.)

If the contract actually made was that the plaintiff was to pay for the walls, and it was the intention of the parties it should be drawn that way, it should be reformed, although plaintiff may have understood its legal effect when it was presented. · For the plaintiff to permit defendant to sign it believing it expressed the true contract, knowing that it did not, was a species of fraud, of which plaintiff cannot take advantage. In the case of *Gillespie v. Moon,* 2 Johns. Ch. (N. Y.) 585, 7 Am. Dec. 559, the first paragraph of the syllabus is as follows:

"Equity will relieve against a mistake in a deed or contract in writing, upon satisfactory parol proof of such mistake, whether the relief is sought affirmatively by a suit to reform the contract, or by way of defense to a bill for specific performance, and this notwithsanding the fact that the mistake is denied by the opposite party."

In the course of the opinion, Chancellor Kent said:

"It is unnecessary to enter more minutely into the parol proof of the fact of the mistake. On that point there is no room for doubt. The only doubt with me is whether the defendant was not conscious of the error in the deed at the time he received it and executed the mortgage, and whether the deed was not accepted by him in fraud, or with a voluntary suppression of the truth. That fraudulent views very early arose in his mind is abundantly proved. He asked Corbet, a witness, if he could not so run the line as to save the lower mill seat to himself; and he told David Brown that he meant to

take counsel, and, if he found he could hold the whole lot, he intended to do so, as it was not his fault that the deed was made as it was. It would be a great defect in what Lord Eldon terms the moral jurisdiction of the court, if there was no relief for such a case. Suppose Mrs. Mann had applied for relief, instantly, on discovery of the mistake, and immediately after delivery of the deed, was no power in the whole administration of justice competent to help her? It has been the constant language of the courts of equity that parties can have relief in a contract founded in mistake as well as fraud. The rule in the courts of law is that the written instrument does, in contemplation of law, contain the true agreement of the parties, and that the writing furnishes better evidence of the sense of the parties than any that can be supplied by parol. But equity has a broader jurisdiction, and will open the written contract to let in an equity arising from facts perfectly distinct from the sense and construction of the instrument itself."

There is no substantial error in the record, and the case should be affirmed.

By the Court: It is so ordered.