# E. RUHLING ET AL., APPELLANTS, *v.* J. M. HACKETT ET AL., RESPONDENTS.

Misjoinder of actions cannot be taken advantage of on a general demurrer.

A deed of conveyance, executed and delivered, carries the absolute legal title to the grantee, and if more land is by mistake conveyed than was intended by the grantor, it carries the legal title to that portion not intended to be conveyed, as well as to that which it was the intention to convey, leaving, however, an equitable interest to that not intended to be conveyed in the grantor.

Courts of equity have the power to correct mistakes in deeds and other executed instruments, so as to make them conform to the real intention of the parties, even to the extent of making a deed include more land than is embraced in it, where it was omitted by mistake, fraud or surprise.

The assignment of a mortgage usually carries with it all the equitable rights of the mortgagee growing out of it. The assignment of the mortgage is itself but the transfer of an equitable right of action to the assignee. With respect to the reformation of a mortgage, the assignee stands in the same position as the mortgagee.

Where the purchaser of real property agrees with the vendor to pay certain incumbrances upon it, as a part of the consideration of the conveyance, the person holding such incumbrance, or the person to whom such payment is to be made, may maintain an action upon such promise or agreement.

Such an understanding or promise does not come within the statute of frauds, and need not be in writing.

APPEAL from the Second Judicial District of the State of Nevada, Ormsby County, Hon. S. H. WRIGHT presiding.

*George A. Nourse*, for Appellants.

The demurrer being general to the complaint as a whole, if *any* cause of action is sustained by its allegations the judgment must be reversed. (10 Howard's Practice R. 222 ; *Martin* v. *Mattison*, 8 Abbott's, 3.)

Nor is it material whether the complaint shows a right on the part of the plaintiff to the exact relief claimed ; demurrer does not lie to the prayer for relief. (*Beal* v. *Hayes*, 2 Sand. 640 ; *Andrews* v. *Shaffer*, 12 How. Pr. 443 ; 15 Ib. 314 ; *Rollins* v. *Forbes*, 10 Cal. 300.)

We will examine *seriatim* the grounds shown by the complaint for bringing suit upon these several causes of action, premising, however, that no question of misjoinder of different causes of action can be raised, as no such ground of demurrer is alleged. (*Nellis* v. *DeForest*, 16 Barbour, 65 ; 3 Cal. 434.)

The complaint alleges an error in the mortgage by mistake, the intention being, as alleged, to mortgage lot six, instead of lot nine. In case of mistake it is the province of a Court of equity to reform the instrument so as to make it conform to the real intention of the parties. (Story's Equity Jurisprudence, secs. 155, 156, 157, 158, 159, 160, and cases there cited.)

But counsel for respondent claims that this case comes within the statute of frauds (Laws of 1861, p. 18, sec. 55), and that therefore the mortgage in question cannot be so reformed as to embrace land not originally included therein ; though admitting that it might on similar showing be reformed by excluding from its operation such part of the land mentioned therein as might have been included by mistake. The English cases I admit establish the rule contended for by counsel for respondents, but the American authorities overwhelmingly sustain the rule for which I contend. The cases on this point are collected in the notes to *Woollam* v. *Hearn*, as reported in 2d Leading Cases in Equity, 404.

It is to be noticed, however, that all the cases relied on by the Court in *Woollam* v. *Hearn*, were cases brought to enforce the specific performance of *executory* contracts. This action is brought (so far as this point is concerned) to reform an executed agreement—a mortgage. It is like an application to reform a deed by including in its description a parcel of land omitted by fraud or mistake.

But even if there be no difference in principle between the cases upon this ground the Court will see that the American authorities, which we must follow, are in direct conflict with the English on this point. (*Philpot* v. *Elliott*, 4 Maryland Ch. 273 ; *Keisselbrack* v. *Livingston*, 4 John. Ch. 144 ; *Tilton* v. *Tilton*, 9 N. H. 385 ; *Tyson* v. *Tassmore*, 3 Barr. 122 ; *Wiswall* v. *Hall*, 3 Paige, 313 ; *Howell* v. *Gibson*, 30 Miss. 464 ; *Blodgett* v. *Hobart*, 18 Vermont, 414 ; *Phyle* v. *Wardell*, 2 Edwards, 47 ; *Bellows* v. *Stowe*, 14 N. H. 175 ; *Smith* v. *Greely*, 14 N. H. 378 ; *Brown* v. *Lynch*, 1 Paige, 147.)

Both the rule of exclusion of parol evidence to vary written instruments, and the statute of frauds, will be suspended when necessary for the prevention or correction of a subsequent breach of trust, or of an original fraud or mistake. A deed

absolute on its face may be proved by parol evidence to be a mere mortgage. (*Flint* v. *Sheldon*, 13 Mass. 448; *Reading* v. *Weston*, 8 Conn. 118; *Howell* v. *Gibson*, 13 Mass. 464; *Williams* v. *Conner*, 11 Yerger, 412; *Langham* v. *Whitaker*, 14 B. Monroe, 624; *Morely* v. *Lane*, 27 Ala. 62–73; *Taylor* v. *Luther*, 2 Sumner, 228; 4 Kent's Com. 143.)

Clayton promised to pay the amount claimed by plaintiff. Such a provision is not within the statute of frauds, for it is not a promise to pay the debt of another. It is a promise to pay his own debt; to pay the plaintiffs the amount which he owed McKey. (*Meech* v. *Smith*, 7 Wend. 315; *Gold* v. *Phillips*, 10 John. 412; *Hilton* v. *Densmore*, 8 Shep. 410; *Allen* v. *Thompson*, 10 N. H. 32; *Perley* v. *Spring*, 12 Mass. 297; *Drakely* v. *DeForest*, 3 Conn. 272; *Jennings* v. *Webster*, 7 Cowen, 256; *Farley* v. *Cleveland*, 4 Cowen, 432; *McCray* v. *Madden*, 1 McCord, 486; *McKinzie* v. *Jackson*, 4 Ala. 230; *Orell* v. *Bell*, 2 J. J. Marshall, 309; *Scott* v. *Thomas*, 1 Scam. 58; *Barber* v. *Bucklin*, 2 Denio, 45; *Todd* v. *Tobey*, 29 Maine (10 Shep.), 219; *Baninger* v. *Warden*, 12 Cal. 314.)

But even had the case been within the statute of frauds, it would not have been necessary to plead that the promise was in writing. The complaint alleges a valid promise. *Non constat* from the complaint that the promise was merely parol. It will be presumed a valid promise until it appears affirmatively not to be so. (*Elting* v. *Vanderlyn*, 4 John. 237; *Dayton* v. *Williams*, 2 Doug. (Mich.) 30.)

*Clayton & Clarke*, for Respondents.

Stripped of the redundancy of verbiage, the facts pleaded tend to establish two legal conclusions:

*First*—That the money loaned by plaintiffs' assignors having been appropriated to the construction of improvements upon lot number nine, plaintiffs have by reason of that fact a lien upon the premises.

*Second*—The mortgage on lot number nine having been intended by the parties to include lot number six, and Clayton having knowledge of the fact at the time of his purchase the Court may correct the mistake, reform the mortgage, and decree the sale of lot number six.

Zartman, plaintiffs' assignor, was not à vendor.   He was simply a loaner of money, the payment of which he attempted to secure by mortgage.

No lien exists in favor of a person loaning money.   (Nash Practice, p. 354; 13 Ohio Reports, 148.)

If a vendor takes security for the purchase money, his lien is gone.   (Nash Practice, 354;  5 Ohio R. 35;  14 Ib. 428;  20 Ib. 546.)

A vendor's lien is not assignable.   (1 Leading Cases in Equity, pp. 363 to 375; 14 Georgia, 216; 1 Paige, 502–506; 6 Howard, Miss. 362–364; 7 Gill & Johnson, Md. R. 120–126; 1 Bland, 519, 524, 525; 4 Md. Ch. 280.)

Zartman not being a vendor, indeed having no lien, could not subrogate plaintiffs to rights which did not exist.   (1 Leading Cases in Equity, p. 368.)

Clayton is not responsible upon his alleged promise to pay the mortgage because it was the debt of another, and the promise is not in writing, and is void under the Statute.   (Statute 1861.)

The right to reform a mortgage is a mere equitable right of action, and,

*First*—Is not assignable, and,

*Second*—Was not assigned by the transfer of the note and mortgage.   (Statutes 1861, pp. 19–21, secs. 55, 61, 75 ; 1 Cal. 121; Ib. 100; 4 Cal. 91; Digest Ohio R. p. 322.)

The mortgage cannot be reformed because of the statute of frauds.   While parol proof is competent to take from, diminish or defeat a written contract respecting lands ; it is not competent to add to or enlarge it.   (Statutes 1861, pp. 19–21, secs. 55, 61, 75; 1 Cal. 121; Ib. 100; 1 John. Ch. 273; 1 Vesey, Jr. 206; 10 Maine, 80; 17 Mass. 303; 19 Conn. 63; 11 Pickering, 439; 14 Vesey, 519; 9 Watts, 106; 4 Barr, 259; Sugden on Vendors, 146 to 151; 2 Leading Cases in Equity, 684, 685, 686 to 715; 2 Leading Cases in Equity, 744, 742.)

Opinion by LEWIS, C. J., full Bench concurring.

The bill in this case is brought to reform a mortgage, foreclose the same, and also to foreclose a vendor's lien.

The plaintiffs allege that on the 30th day of June, A. D. 1863, the defendant McKey made and delivered to one Zartman his promissory note in writing, whereby for value received he promised to pay to Henry Zartman, or order, the sum of three thousand dollars, in United States gold coin, with interest at the rate of five per cent. per month; that, to secure the payment thereof, McKey made, executed and delivered to Zartman his indenture of mortgage, whereby he granted, bargained and sold to Zartman lot number nine in block number seventeen, in Carson City, which conveyance was intended as a mortgage. It is further alleged that on the 4th day of August, A. D. 1863, the said Zartman, for value received, transferred and delivered the said note, and assigned and delivered the said mortgage to the said plaintiffs. It is also alleged that at the time of the execution of the note and mortgage above referred to, McKey was the owner of lot number six in block number seventeen, in Carson City; that it was the intention of McKey and Zartman, and was understood and agreed by and between them, that lot six, instead of lot nine, should be embraced in and covered by said mortgage; that it was not intended to mortgage lot nine at all, but only lot six; that both parties supposed that lot six was the one described in the mortgage at the time of its execution, but that, by the mistake of Zartman or the draughtsman of the instrument, lot number nine was described and embraced in said mortgage, instead of lot number six; that at the time of the making and delivery of the note and mortgage, the defendant McKey had no interest whatever, in lot number nine; that in March, A. D. 1864, Mrs. Williamson, who owned lot number nine, conveyed the same to the defendant Clayton, and at the same time McKey, by Mrs. Williamson, acting as his attorney in fact, also conveyed all his right, title and interest in lot number six to defendant Clayton; that, for and in consideration of the sale to Clayton of the lots above mentioned, he agreed to pay to the plaintiff the sum of four thousand four hundred and fifty dollars— the amount then due on the note and mortgage held by them, and which was a part of the consideration for the conveyance of the lots to him. It is also alleged that at the time, and before the conveyance of the lots to him, Clayton was informed

Ruhling *et al.* *v.* Hackett *et al.*

of and had full knowledge of the mistake in the mortgage, and of the intention of the plaintiffs to have the same reformed, so as to make it embrace and cover lot six instead of lot nine.

Plaintiffs allege further that though often requested, Clayton refuses to pay to them the four thousand four hundred and fifty dollars which he agreed and promised to pay. For the purpose of securing a lien upon lot nine, it is alleged in the complaint that the three thousand dollars loaned by Zartman, though borrowed by McKey, was in fact for the benefit of Mrs. Williamson, and that the entire sum so loaned, was by her expended in placing improvements on that lot, and that such improvements now constitutes its chief value. Upon these facts the plaintiffs pray that the mortgage assigned to them may be reformed so as to make it embrace lot number six; that that lot may be sold to satisfy their claim, and that they have a lien upon lot number nine.

To this complaint the defendant Clayton interposes a general demurrer. The only inquiry which can be presented upon this demurrer is, whether the complaint states facts sufficient to constitute a cause of action. Misjoinder of actions cannot be raised upon a general demurrer, and, therefore, if it were admitted that plaintiffs have united assumpsit with a bill in equity to reform a mortgage deed, it cannot be taken advantage of under the demurrer.

It is claimed by respondents' counsel that the mortgage, in this case, cannot be reformed so as to make it include land not described in it at the time of its execution, though it be admitted that it was written by fraud or mistake; that an instrument for the conveyance of land may be reformed so as to diminish the quantity conveyed, or agreed to be conveyed, but not to extend it to land not described in the deed or agreement, because it is said to order the conveyance of land which, by mistake or fraud, is omitted from the deed, is in violation of the statute of frauds which declares that no estate or interest in land shall be created, granted or assigned, unless by deed or conveyance in writing, signed by the party granting the same; but that ordering a reconveyance of land which is conveyed by fraud or mistake, is not in violation of this statute.

For this distinction we find no authority but the dictum of Weston, J., in the case of *Elder* v. *Elder*, 10 Maine R. 80, who whilst acknowledging the authority of the case of *Gillispie* v. *Moon* (2 John. C. R. 585), yet endeavors to draw the distinction above stated between the two cases. That distinction may have been clear and entirely satisfactory to the learned Judge who delivered the opinion in *Elder* v. *Elder*, but we must acknowledge it to be utterly beyond our comprehension.

In the case of *Gillispie* v. *Moon* (2 John. Ch. 585), it appears the defendant had agreed to purchase two hundred acres of land from the plaintiff, but by mistake the deed embraced fifty acres more than was intended to be conveyed. The defendant, though acknowledging his mistake, insisted upon holding the entire two hundred and fifty acres. The Court admitted parol testimony to establish the mistake, and upon its being established, ordered the defendant to reconvey the fifty acres not intended to be conveyed to the plaintiff. The deed from Mrs. Mann in that case unquestionably conveyed the legal title to the entire two hundred and fifty acres to the defendant, and left the grantor a mere equitable estate in the fifty acres not intended to be conveyed.

A deed of conveyance, executed and delivered, carries the absolute legal title to the grantee, and if more land is by mistake conveyed than was intended by the grantor, it carries the legal title to the portion not intended to be conveyed as well as to that which it was the intention to convey, leaving, however, an equitable interest to that conveyed by mistake in the grantor.

If the defendant Moon had conveyed the entire two hundred and fifty acres described in his deed to a *bona fide* purchaser without notice of the mistake, such purchaser would undoubtedly have gotten a good title to the entire tract, which even the proof of the mistake would not defeat.

Is it not as much a violation of the statute of frauds to admit parol proof of the mistake in such a case, and to decree a reconveyance as to decree a conveyance of land omitted from the deed? Where more land is conveyed than was intended, a reconveyance is decreed, and upon what authority? Merely

Ruhling *et al. v.* Hackett *et al.*

the parol proof that it was not intended to be conveyed, that the grantee in whom the legal title is vested by mistake, ought not to be allowed to retain it. There is no agreement, either verbal or in writing, to reconvey, and yet it is admitted that in such a case the Court may correct the mistake and order a reconveyance.

The case of *Gillespie* v. *Moon* is therefore as much within the statutes of fraud as any case for the correction of a mistake can be, as it decreed the conveyance of fifty acres of land by defendant to plaintiff whilst there was no agreement or memorandum in writing to do so.

It cannot be said that the conveyance by mistake of more land than is intended by the parties vitiates the deed as to that portion, and that no title to the portion so conveyed passes to the grantee. Such a rule might prevail as to simple contracts, but not to deeds conveying real estate.

But the rule that Courts of equity have the power to correct mistakes in deeds and other instruments, so as to make them conform to the intention of the parties, is so universally recognized and acted upon, that it would seem scarcely necessary to do more than refer to a few cases which directly sustain our views upon this question.

It would be a reproach indeed to the equity jurisprudence of our country if it could be justly said of it that it is so trammeled in the meshes of inflexible rules that it cannot correct a mistake, or grant relief from the hardships of fraud and imposition, when, as in this case, the rights of innocent parties do not intervene, and the mistake or fraud is admitted by the defendant.

Can it be seriously claimed that if it be the intention of the grantor to convey, and the grantee to purchase, a valuable piece of land, and the consideration is paid, but by mistake a piece utterly worthless is described in the instrument of conveyance, that a Court of equity may not reform such instrument so as to make it conform to the admitted intention of the parties? It is the peculiar province of equity to relieve from the consequences of fraud, surprise and mistake; but it would illy merit our commendation if it gave no adequate remedy in cases of such manifest injustice, and of such frequent occurrence.

The question, however, is no longer *res integra*, and the power of a Court of Chancery to correct such mistakes is thoroughly established. (3 Starkie on Evidence, 1018, 1019; *Willis* v. *Henderson*, 4 Scammon, 13; *DePrimer* v. *Cantillon*, 4 John. Ch. R. 85; *Wiswall* v. *Hall*, 3 Paige, 313; *Coleman* v. *Wooley*, 3 Dana, 486; *White* v. *Wilson*, 6 Blackford, 448; *Blodgett* v. *Hobart*, 18 Vermont (3 Washb.), 414; *Alexander* v. *Newton*, 2 Grattan, 266; *Parkham* v. *Parkham*, 6 Humph. 287; *Rogers* v. *Atkinson*, 1 Kelly, 12; *Klopton* v. *Martin*, 11 Ala. 187; *Bailey* v. *Bailey*, 8 Humph. 230; *Baynord* v. *Norris*, 5 Gill, 468; *McKay* v. *Simpson*, Ird. Eq. R. 452; *Trout* v. *Goodman*, 7 Geo. 383; *Moseby* v. *Wall*, 23 Miss. 81; *Tilton* v. *Tilton*, 9 New Hampshire, 385.)

In *Willis* v. *Henderson*, *supra*, by mistake a tract of land described in a mortgage was not the tract intended by the parties to be mortgaged; it was held, however, that the purchasers of the land *intended* to be mortgaged having notice of the mistake took it subject to the mortgage, and that a Court of equity may correct the mistake and enforce it against the land in the hands of such purchasers. So in the case of *Blodgett* v. *Hobart*, where it appeared that by mistake a part of the lands agreed to be mortgaged were not included in the mortgage deed, it was held that on a bill for that purpose a Court of Chancery would correct the mistake by ordering the mortgage to be so reformed as to include the land omitted.

In *Alexander* v. *Newton* it was said that a mistake of a scrivener in drawing a deed, whether in law or in fact, will be corrected by a Court of equity even against *bona fide* creditors.

So in *Klopton* v. *Martin*, the Court held that where a written instrument expresses more or *less* than the parties intended, the Court of equity will reform it. And Mr. Justice Storey, in *Taylor* v. *Suther* (2 Sumner, 228), uses the following language:

"Nothing is better settled than that the true construction of the statute of frauds does not exclude the enforcement of parol agreements respecting the sale of lands in cases of fraud; for, as it has been emphatically said, that would be to make a statute purposely made to prevent fraud the veriest instrument of fraud; and the same rule governs in case of mistake

as of fraud." Indeed, we are unable to find a single case which militates against the general rule that a Court of equity will reform a mistake in all executed contracts.

There are many cases in which it is held, and perhaps the weight of authority sustains the doctrine, that a Court of equity will not correct a mistake in an executory contract where the mistake is denied by answer, and enforce its specific performance as corrected.

But if the contract be executed, money paid and land omitted by mistake from the instrument which it was the intention of the parties to include, it would be a deplorable defect in the equity powers of our Courts if relief could not be granted. This is the distinction made in all the cases, and we think not a solitary case can be found where a Court of equity has refused to reform a material mistake in a deed or mortgage, unless there were some defense besides the statute of frauds, such, for instance, as unreasonable delay upon the part of plaintiff. All the authorities relied on by the respondents' counsel where the reformation was refused are cases of executory contracts.

But it is said that even if such a mistake can be corrected in favor of the original mortgagee, that it is a mere equitable right of action which is not assignable.

The authorities, however, are directly opposed to this position. The assignment of the mortgage usually carries with it all the equitable rights of the mortgagee growing out of it. Indeed, the assignment of a mortgage is itself but a transfer of an equitable right of action to the assignee. With respect to the right of reforming the mortgage, the assignee stands in the same position as the mortgagee. ( *Washburne* v. *Morrills,* 1 Day's Cases in Error, 139 ; *Gillespie* v. *Moon,* 2 John Ch. R. 585.)

The complaint alleges that Clayton had notice of the mistake, and of the intention of the plaintiffs to have the same reformed, at and before the time of his purchase of lot number six. By demurring to the complaint, this fact is admitted, and he is therefore placed in the same position with respect to the reformation of the mortgage deed as his grantors were. ( *Blodgett* v. *Hobart,* 13 Vermont, 414 ; *Willis* v. *Henderson,*

4 Scammon, 13.) We are also of opinion that the plaintiffs may maintain an action against the defendant Clayton upon his promise to Mrs. Williamson to pay a certain proportion of the purchase money. Such a promise is not a collateral promise in the nature of a guarantee of the debt of a third party, but is an original promise upon which the beneficiary may maintain his action direct. (1 Parsons on Contracts, 390; *Hind* v. *Holdeship*, 2 Watts, 104; *Arnold* v. *Lyman*, 17 Mass. 400; *Jackson* v. *Mayo*, 11 Mass. 152.) This is the generally recognized rule in the American cases; the English cases, however, do not maintain the same rule.

The judgment of the Court below reversed and cause remanded, and leave granted defendant to answer.