EUGENE LATTIN, OTTO A. OMMEN AND HOWARD
W. CASSITY, AS TRUSTEES FOR THE UNITED BROTH-
ERHOOD OF CARPENTERS AND JOINERS OF AMERICA,
LOCAL UNION 1780, LAS VEGAS, NEVADA, APPEL-
LANTS, *v.* FRANK F. GRAY AND ELEANOR
A. GRAY, HUSBAND AND WIFE; CHESTER C.
COOPER AND ESTHER M. COOPER, HUSBAND
AND WIFE; CHARLIE E. STEEL AND SALLY
STEEL, HUSBAND AND WIFE, RESPONDENTS

No. 4098

March 3, 1959                                    335 P.2d 778

*George Rudiak and Betty Aronow,* of Las Vegas, for
Appellants.

*McNamee and McNamee* and *Franklin P. R. Ritten-
house,* of Las Vegas, for Respondents Gray and Cooper.

*Hawkins and Cannon,* of Las Vegas, for Respondents
Steel.

# OPINION

By the Court, MERRILL, C. J.:

This action is brought by appellants on behalf of the Las Vegas local of the United Brotherhood of Carpenters and Joiners. They seek reformation of certain deeds. Basis for the suit is an alleged mutual mistake of fact, due to which property conveyed by the union was misdescribed.

Judgment below was for the defendants and the union has taken this appeal. It contends that the evidence establishes its right to reformation beyond dispute in that (1) the property which the union intended to convey was misdescribed through mutual mistake of seller and buyer; (2) that those who subsequently succeeded to the property conveyed had knowledge of the mistake and of the union's equity of reformation and, therefore, were not bona fide purchasers.

The issues on this appeal relate to the sufficiency of the evidence to establish the union's contention. Our function is, in substance, limited to an analysis of the facts.

In 1948 the union acquired a lot in Las Vegas extending between Fremont Street on the north and Charleston Boulevard on the south. It was described, according to the official plat filed of record, as having a depth of 290 feet on the east and 394.20 feet on the west.

In April 1951 the union completed a building on the

south portion of the lot facing Charleston Boulevard and set back 50 feet from the street. The building was 100 feet in depth. The lot had been filled and leveled to accommodate the building to a distance of about 175 feet from Charleston Boulevard. Behind the building the fill continued into the lot to a distance of approximately 25 feet. Beyond that point the northern portion of the lot remained in its original unimproved state, with a slightly lower elevation than that of the improved southern portion.

The union then decided to dispose of the unimproved northern portion of the lot fronting on Fremont Street. On September 26, 1951 it entered into an oral agreement with respondent Steel to sell this portion to him.

Several officers and members of the union participated in the discussions leading to the agreement and testified to the substance of those discussions. From their testimony it appears that the intent of the union as expressed to Steel was to convey to him the unimproved portion of the lot north of the fill: an irregularly shaped parcel measuring 223.9 feet on Fremont Street, with a depth of 244.2 feet on the west and 140 feet on the east. On the south the parcel joined that retained by the union, 200 feet in width. The 140-foot east line was paced off by the union officials. A sketch was drawn by a union representative to show the dimensions of the parcel to be conveyed and was examined by Steel and approved. Throughout, the intention of the union to retain for itself a 25-foot alleyway to the rear of its building was made clear.

On October 16, 1951 an escrow was opened. The escrow instructions described the parcel to be conveyed. The dimensions were in accordance with the agreement. On November 5, 1951 the escrow was closed and the deed to Steel was recorded. The parcel as described in the deed contained the dimensions agreed upon.

The union, however, had erred in an important respect. Assuming the depth of its lot upon the east to be 290 feet (in accordance with its deed and the recorded plat) and finding that the depth of the parcel it wished to convey was, on the east, 140 feet, it concluded that the

depth of the parcel it wished to retain was 150 feet and that a parcel of that depth would include a 25-foot alleyway to the rear of the building. This error was reinforced by a second error. It assumed that its building was set back 25 feet from Charleston Boulevard rather than 50 feet. Its calculations thus supported the 150-foot depth it assumed its retained parcel to have: 25-foot set-back plus 100-foot building plus 25-foot alleyway.

The fact was that the deed to the union and the recorded plat were in error as to the true depth of the lot. In fact it was 21.9 feet greater in depth. It was this 21.9 feet which the union representatives, in pacing off the northern parcel, had noted as remaining between their building and the parcel to be conveyed.

Based upon this error as to the facts, both escrow instructions and deed to Steel contained a misdescription. In describing the property to be conveyed the "true point of beginning" was fixed on the west boundary line 150 feet north of Charleston Boulevard. Thus the union mistakenly eliminated the rear alleyway they had intended to retain and, by conveying all property up to its building's real wall, foreclosed itself from use of the rear door and rear sidewalk which its building provided.

It is undisputed that our courts will reform contracts and deeds in accordance with the true intention of the parties thereto, when their intention has been frustrated by a mistake. Ruhling v. Hackett, 1 Nev. 360; Holman v. Vieira, 53 Nev. 337, 300 P. 946. The mistake in question, however, must be mutual to the parties. Roberts v. Hummel, 69 Nev. 154, 243 P.2d 248.

From the record a mistake of fact on the part of the union is unquestionably established. Respondents contend, however, that the record does not establish that the mistake was shared by Steel and thus was a mutual mistake. They contend that the record contains testimony from which the court below could have found that Steel intended to obtain the full true depth of the lot north of the "true point of beginning."

The record compels us to reject this contention.

Steel did not deny the testimony of the union witnesses as to the oral agreement and the discussions leading up to it. Steel simply stated, in effect, that he did not remember. In support of their contention respondents point to the following portion of Steel's testimony: "Q. The only thing you know, you thought you were buying the property that was covered in the deed and the escrow? A. That is right."

This testimony is wholly insufficient to establish that Steel was not mistaken with respect to the property description. The deed itself shows upon its face that the parties were in error since the deed's description did not square with the true facts as to dimensions. Steel's testimony thus serves to beg the essential question as to mistake. In the face of the error incorporated into the deed it was incumbent upon Steel, without equivocation, to take one of two positions: that he actually intended, regardless of the deed's description, to get a parcel greater in depth by 21.9 feet than that which was described; or that he intended to get all land from Fremont Street up to the rear wall of the union building, whatever the true description of such parcel might be.

Steel certainly has not asserted that either was the case.

We conclude that the record establishes without dispute that there was mutual mistake in fixing the "true point of beginning" at a point in conflict with the described dimensions of the area conveyed to Steel. As against Steel the union possessed an equitable right to have its deed to Steel reformed to the end that it convey the parcel intended to be conveyed.

On January 14, 1952 Steel agreed to sell his parcel to respondent Gray. An escrow was opened. The instructions contained the same description as that set forth in Steel's deed from the union.

Gray proposed to build a motel on the property. He

checked the dimensions on the ground and suspected that there were discrepancies. He learned that a local surveyor had a plat of the property. He secured a copy and learned that the lot, between Fremont Street and Charleston Boulevard, was actually 21.9 feet longer than was shown on the earlier conveyances and the official plat filed of record. Notwithstanding this knowledge on Gray's part, the deed from Steel to Gray, recorded in April 1952, contained the same description as that from the union to Steel. At the time the escrow was closed he pointed out to his realtor the fact that the deed was not giving him what he felt he should have. He was told that the promised dimensions would "put him in the building."

As to Gray the question is not whether he actually intended and expected to purchase all of the lot north of the "true point of beginning." The question, rather, is whether he had knowledge of the fact that in establishing that point the union and Steel had acted in mistake; or whether he had such knowledge as would have put a reasonable man upon inquiry as to the existence of such mistake. Lang Syne Gold Mining Co. v. Ross, 20 Nev. 127, 18 P. 358.

Upon his checking of the dimensions Gray became aware of two facts with reference to the "true point of beginning": that it was squarely against the rear wall of the union building; that it did not square with the dimensions specified in the deed to Steel. Upon his securing the true survey plat he became aware of an additional fact: that all parties concerned were in error as to the true dimensions of the original lot running between Fremont Street and Charleston Boulevard.

Gray thus had actual knowledge that a mistake had been made. The parties to the union-Steel deed either intended to refer to the full depth north of the described point of beginning or to an area of the specified dimensions. They could not have meant both. Since the described point of beginning would deprive the union

of the full use of its building, Gray's knowledge put him upon inquiry. He had the clear duty of ascertaining the extent of the mistake of which he had actual knowledge. Lang Syne Gold Mining Co. v. Ross, supra.

Respondents point to certain portions of the record as reinforcement of Gray's position. It appears from Gray's testimony that prior to the closing of his escrow he had commenced the construction of his motel and that his grading for that purpose had extended up to the union building; that he had expressed to the union the intention to build to within five feet of the building; that in the fall of 1952 he had discussed the 21.9-foot discrepancy with the union and that the union had offered to buy 25 feet from him.

These facts may show an intent on Gray's part to take full advantage of his discovery. They do not, however, serve to establish the bona fides of his position. Efforts made by the union to negotiate a settlement out of court cannot be held to affect its position in this suit. See: 20 Am.Jur., Evidence, sec. 565, p. 477.

We conclude that Gray cannot claim the status of a bona fide purchaser for value; that his position is no better than that of his grantor, Steel; that he acquired the property subject to the union's equity of reformation.

In October 1952 Gray gave to respondent Cooper an option to buy the east half of his property. The option described the east boundary as 140 feet in accordance with all previous conveyances.

In January 1953 Gray recorded the true survey plat showing the true dimensions. Later that month the union's attorney advised Cooper of the 21.9-foot discrepancy and of the fact that the union claimed an equitable right to it. Cooper acknowledged that he understood that there was a dispute as to this strip. The following day the Cooper transaction was closed, a deed passing from Gray to Cooper which stated the full true dimensions of the parcel extending from the 150-foot point of beginning.

With Cooper as with Gray the question is not as to his intent and expectation under his agreement of purchase. The question is whether, at the time of taking title or payment of purchase price, he had knowledge or notice of the union's mistake. An unperformed obligation does not make an obligor a purchaser for value. He must have actually paid the purchase price before securing notice. Moresi v. Swift, 15 Nev. 215. Cooper, upon the record, was clearly put on notice prior to the closing of his transaction. He cannot claim the status of a bona fide purchaser for value.

Throughout this opinion we have referred to Gray and Cooper in the singular. Actually, each is married and in each instance the deeds ran to husband and wife. In one instance the husband and wife took as joint tenants.

It is contended that, even should knowledge or notice on the part of the husband be established in either case, there is no evidence whatsoever of knowledge on the part of the wife; that agency between joint tenants does not follow from the fact of joint tenancy; citing 92 C.J.S., Vendor and Purchaser, sec. 350, p. 290.

It is clear upon the record, however, that in each instance the husband negotiated for both himself and his wife. The facts establish that actual agency existed. Notice to the husband would, then, amount to notice to the wife. Steele v. Robertson, 75 Ark. 228, 87 S.W. 117.

Reversed with instructions that judgment be entered to the effect that the deeds from the union to the Steels, from the Steels to the Grays and from the Grays to the Coopers be reformed to specify a true point of beginning 21.9 feet north of that set forth in those instruments.

BADT, J., HANNA, D. J., concur.

(Note: McNAMEE, J., having disqualified himself, the Governor designated Honorable Richard R. Hanna, Judge of the First Judicial District Court, Department No. 2, to sit in his place and stead.)