Lee **ETHRIDGE** and Jane Ethridge,
Respondents,

v.

Hershel **PERRYMAN** and Myrtle Perryman,
His Wife, Stacy Perryman, and **T. Victor**
Jeffries, Trustee, Appellants.

No. 49131.

Supreme Court of Missouri,

Division No. 1.

Jan. 14, 1963.

J. W. Grossenheider, Lebanon, for appellants.

Wendell L. Evans, Jr., Lebanon, for respondents.

HOUSER, Commissioner.

This is a suit in equity to reform a deed of trust to include three parcels of land instead of one, on the ground of mutual mistake of fact; to foreclose the reformed instrument, and cancel deeds to the other two parcels. Plaintiffs Lee Ethridge and wife are the beneficiaries named in the deed of trust. Defendants Hershel and Myrtle Perryman, husband and wife, are grantors of the deed of trust and of the deeds to the other two parcels. Defendant T. Victor Jeffries is the trustee named

in the deed of trust. Defendant Stacy Perryman, father of Hershel, is the grantee named in the deeds to the other two parcels. The chancellor found the issues for plaintiffs and against defendants, decreed reformation on the ground of mutual mistake of fact, and ordered the foreclosure of the reformed instrument. All parties defendant except the trustee appealed.

We have jurisdiction because this case involves title to real estate. Article V, § 3, Constitution of Missouri, 1945, V.A.M.S.

Hershel and Myrtle Perryman owned three adjoining lots in Lebanon, as tenants by the entireties. Lots 1 and 2 fronted on a street. Their house was built on Lot 1. Lot 3 adjoined and lay to the rear of Lots 1 and 2. There was no access to Lot 3 by street or road. Perryman wanted to borrow money. Lee Ethridge came to the Perryman home to discuss making a loan, and to look at the property Perryman was offering as security. After inspecting the Perryman property Ethridge agreed to make a loan. The parties went to the offices of Jeffries Abstract Company, where employee Marie Jones prepared a note for $3,425 and a deed of trust, which Hershel and Myrtle Perryman signed. The Perrymans failed to pay the note or any part of it when due and the mortgage was foreclosed. Lee Ethridge bid the land in for $1,000 and received a trustee's deed to the property. Ethridge agreed with Perryman that if the latter found a purchaser, Ethridge would deed the property to the purchaser for the amount of the loan, interest and expenses of foreclosure, and Perryman could keep any balance over and above that amount. Perryman found a purchaser, one Claude Admire. Perryman, Ethridge and the purchaser Admire met at the abstract company office to close the deal. There it was discovered that the foreclosed deed of trust had described Lot 3 but had not included Lots 1 and 2. Perryman refused to consummate the deal, and this action followed.

Where the lender of money intends to make a loan on the basis of the security of an entire tract of land consisting of three parcels, and the borrower intends to mortgage the entire tract, and they make an agreement on these terms but by mistake of the scrivener only one of the three parcels is described in the deed of trust, and the mistake is mutual as between mortgagor and mortgagee, the latter is entitled in equity to reformation of the deed of trust to include the part omitted. In this connection see Zahner v. Klump, Mo.Sup., 292 S.W.2d 585; Bartlett v. White, Mo.Sup., 272 S.W. 944.; St. Louis 221 Club v. Melbourne Hotel Corp., Mo.App., 227 S.W.2d 764. The burden of proof in such case is upon the party seeking reformation to show by clear, cogent and convincing evidence (1) a pre-existing agreement of the parties to describe the entire tract of three parcels in the deed of trust, see Dougherty v. Dougherty, 204 Mo. 228, 102 S.W. 1099, (2) the mistake and (3) the mutuality of the mistake. Leimkuehler v. Shoemaker, Mo.Sup., 329 S.W.2d 726. We review the case de novo, reaching our own conclusions, Leimkuehler v. Shoemaker, supra, 329 S.W.2d, l. c. 730, giving due deference, however, to the finding of the chancellor where issues of fact have been decided upon conflicting evidence. In such case the chancellor's finding "will be sustained unless the proof is palpably insufficient in clarity and cogency to warrant the finding made by him." City of Warsaw v. Swearngin, Mo.Sup., 295 S.W.2d 174, 181, 182.

On the disputed issues of fact our independent findings are consistent with the decree of the trial chancellor. Plaintiffs' evidence that the parties agreed that all three of the lots stand as security for the debt is clear and compelling. We believe Ethridge's testimony, corroborated by his son, that Perryman took Ethridge through the

house, showed him the number of rooms and "all about it," and over all the land; that Perryman was willing and intended to give Ethridge "the house and the land there" as security for the loan, and that Ethridge would not have loaned the money on the back part of the property (Lot 3) without the house. We discount Perryman's testimony, although corroborated by his father, that after looking over the property Ethridge "wanted the whole thing" but that Perryman refused and gave Ethridge his choice of "either the house and the two lots in front, or the rear property," and that Ethridge stated he would rather have the rear property because "the house might burn down," while the rear property (vacant Lot 3) "might be fine building lots."

With respect to the reasonable market value of Lot 3 on the date of the loan we accept the testimony of T. Victor Jeffries, an attorney and vice-president and chairman of the board of a savings and loan association in Lebanon, and that of C. R. Willard, loan officer of a bank there, that it was worth from $1,200 to $1,500 without an access road (there was none); $2,000 with a road. We question the testimony of an adjoining landowner that Lot 3 was worth "about $4,500" and that it could be subdivided into lots worth $500 each.

The scrivener's testimony supports plaintiffs' evidence that the parties agreed that all three lots be included in the description of the land to be mortgaged. Marie Jones testified that Ethridge and Perryman came into the office together; that Perryman handed her an abstract of title with instructions to bring it up to date and to prepare a note and mortgage for the land "covered" and "that Perryman owned" in the abstract,—"for all of his land." The abstract showed that the Perrymans owned three separate tracts, Lots 1, 2 and 3, acquired by three separate deeds, all described by metes and bounds. In drawing the deed of trust Marie Jones mistakenly omitted the description of Lots 1 and 2.

She copied only the description of Lot 3, taking it off the sheet of the abstract describing land mortgaged to one Curtis. She thought this was all the land shown in the abstract as the property of the Perrymans, and did not know of the mistake at the time. She testified that the description written into the deed of trust did not cover the property "that Mr. Ethridge and Mr. Perryman instructed [her] to draw a mortgage up on"; that the abstract covered "tracts 1, 2 and 3, and that was the land * * * [she] should have prepared it for"; but that "the mortgage was just this Tract No. 3." Perryman's testimony that he handed Marie Jones a deed containing a description of Lot 3 from which to copy the description, and that he did not give her an abstract of title, was specifically denied by Marie Jones. We accept the testimony of Marie Jones, an independent witness whose testimony has the clear ring of truth about it, both in deference to the trial chancellor and upon our own study of the conflicting testimony on this phase of the case.

In support of their claim that Lots 1 and 2 were not intended to be included the Perrymans testified that before Mrs. Perryman would sign the deed of trust she inquired and wanted to be assured that it did not include the house and front lot and that both Ethridge and Perryman so assured her, but for reasons stated infra we find this did not happen.

We find in the foregoing facts a case of mutual mistake of fact; that the scrivener was instructed to include all three lots in the description and that all three were intended and agreed by Ethridge and Perryman to be so included, but that by mistake of the scrivener only one of the lots was described; that when the deed of trust was executed and delivered both Ethridge and Perryman considered that all three were included; and that as between Ethridge and Perryman the mistake was mutual.

Subsequent events confirm this conclusion. Twice after the loan but before foreclosure Perryman sought to borrow money from Ethridge. The first time he wanted $250 for insurance on his house and extra money to tide him over "until work opened up." Ethridge made no further loan to Perryman, but did pay for an insurance policy on the house, which was issued in the name of the Perrymans, with a loss payable to mortgagee clause in favor of the Ethridges. The original endorsement executed after foreclosure, changing the named insured from Perrymans to Ethridges and reciting "the mortgage clause in favor of Lee and Jane Ethridge is deleted from this policy," was introduced in evidence. The second time Perryman wanted to borrow money for a filling station venture. Ethridge told him he had no money to lend but if this was such a good deal he ought to be able to borrow some money elsewhere, to which Perryman answered that because Ethridge had "all the loan there was on his property over here, house and land, * * * he [Perryman] couldn't go any place else to get the money." A neighbor Robert Arnold, overheard this conversation, and verified the fact that Perryman had stated he could not borrow on the property elsewhere because Ethridge had a mortgage "on all of it, the house and all."

After the foreclosure Ethridge went to Perryman's house and told him all he wanted was his money; that Perryman could sell the property, and Perryman could have all he received from a sale of the property over and above the amount owed. Perryman interested Mr. Admire in the purchase of Lots 1, 2 and 3, and they arrived at a sale price of $4,200 "on the whole place," "where the house set and the whole thing," i. e., the house, both front lots, and all of the back lot except for a small square of land at the rear of Lot 3, which Perryman wished to reserve. During the negotiations Mr. Admire raised the question of the foreclosure. Perryman gave Mr. Admire "the impression" that Ethridge had a deed to all three lots; and that Perryman had "let Ethridge have it back," but assured him that it was agreeable with Ethridge for Perryman to "go ahead and sell it, all he wanted was what he had in it." Perryman told Mr. Admire that he would call Ethridge, and that Ethridge would "be over the next day and make the deed" to Mr. Admire.

On November 28, 1960 Perryman, Admire and Ethridge convened at the abstract company office to consummate the sale to Admire of the land formerly owned by Perryman, then supposedly held by Ethridge under his trustee's deed. Barbara Flood, an employee of the abstract company, testified that the deal as explained to her was that Mr. Ethridge was to convey all of the property (Lots 1, 2 and 3) to Mr. Admire, except the small "dog-leg" on the back side of Lot 3, which was to be deeded from Mr. Admire to Mr. Perryman. All three men agreed to this. In checking the descriptions the error was found. Barbara Flood discovered that the description in the deed of trust to Ethridge did not fully cover the three lots intended to be conveyed, but covered only Lot 3. Mr. Jeffries was consulted, and he explained the situation to Perryman. When Perryman received this information he was confused, and had a blank surprised expression on his face. Perryman asked for a second explanation, saying "You mean my house wasn't on this mortgage?" Perryman wanted assurance that his house was "not in that description." When he was so assured, and after he was informed that to correct the error he and his wife would have to sign a conveyance to Admire, Perryman said "To hell with it, if my house is not in it," and walked out. After Perryman left the abstract office he encountered Mr. Admire (who had stepped out to make some arrangements at the bank) on the street, and said that "the mortgage wasn't on the house where he lived and he wasn't going to sign no papers until he saw further * * * that [Perryman] told them that he didn't have to sign no deed,

* * *." The next day Hershel and Myrtle Perryman deeded Lots 1 and 2 to his father, defendant Stacy Perryman.

Perryman's uncorroborated testimony that his agreement with Mr. Admire was a deal for the sale of the back lot (Lot 3) only, for a consideration of $4,500, is not accepted in view of the credible evidence to the contrary.

▊ Appellants make the point that the decree is erroneous "because no evidence was presented from which the court could find a mistake *on the part of Myrtle Perryman*, so the plaintiffs did not sustain their burden of proof to entitle them to the equitable relief of reformation against her." Appellants point out that Myrtle Perryman was not present at any of the prior negotiations between her husband and Lee Ethridge, or at any of the preliminary discussions at the abstract company office on the day the note and deed of trust were prepared and executed. Hershel and Myrtle Perryman gave uncorroborated testimony that when Myrtle Perryman arrived at the office, and "when they read the deed off" she inquired of those present (Lee Ethridge, Marie Jones and Hershel Perryman) whether the deed included "the front part, the house, and they said no"; that she told "them" that if it did she would not sign because she and her husband had children and that they wanted and needed the house "to have a place to raise them children"; that she was assured both by Mr. Ethridge and her husband that the deed did not include the house. Appellants say these facts show there was no mutual mistake of fact as between Lee Ethridge and Myrtle Perryman, and demonstrate that the minds of all of the parties did not meet on the subject of what real estate was intended to be conveyed. The trial chancellor, who had the best opportunity to judge of the credibility of the witnesses, evidently rejected this testimony as unworthy of belief. We reach the same conclusion in deference to the chancellor and upon our own independent appraisal of this testimony as improbable.

If Myrtle Perryman had asked the assembled group this question Marie Jones would have heard it, but Marie Jones made no reference to such a conversation. Lee Ethridge would have heard it and protested, for he was an experienced money lender and after having reached an agreement with the borrower that all three lots were to stand as security for the loan of $3,425 it is impossible to believe that knowingly and willingly he would have stood idly by and permitted the papers to be signed giving him Lot 3 only (worth from $1,200 to $1,500) as security. And if Hershel Perryman had truly considered that he had mortgaged Lot 3 only he would not have stated to Lee Ethridge in the presence of Robert Arnold that Ethridge had a mortgage on all of his property, "house and all." Nor would Perryman have given Mr. Admire to understand that Ethridge had foreclosed on all three lots, or have been confused and surprised when Barbara Flood's discovery revealed to him that Lots 1 and 2 had been omitted from the deed of trust, or have abruptly abandoned the Admire deal when he received the news. Myrtle and Hershel Perryman's testimony about her inquiry and assurance immediately before she signed the deed of trust cannot stand in the light of other accepted facts. It is true, as pointed out by appellants, that this testimony was not directly contradicted by the testimony of others, but the failure to contradict it does not require its acceptance. The trial chancellor was not bound to do so, and this court is not obliged to believe it, even though not directly contradicted or impeached, for the credibility of witnesses is for the triers of the facts. Adam Hat Stores v. Kansas City, Mo.Sup., 316 S.W.2d 594, 598. Excluding it, the question remains whether the mistake of Hershel is attributable to Myrtle Perryman, on the ground of agency. The agency of a husband for his wife may be shown by direct evidence or by facts and circumstances which will authorize a reasonable and logical inference that he was empowered to act for her or that she ratified his unauthorized

acts. 41 C.J.S. Husband and Wife § 70, p. 548. The parties were husband and wife. A wife by her actions and conduct may be estopped to deny her husband's authority to act as her agent for her in her behalf. 41 C.J.S. Husband and Wife § 296, p. 781. It is apparent that Myrtle Perryman entrusted the entire transaction to her husband Hershel; that he acted and negotiated not only for himself but for both himself and wife with reference to the property held by them by the entireties. When the deal was made he arranged for the parties to meet at the abstracter's office to close the deal, and Myrtle Perryman appeared for that purpose. It is a fair inference that she was apprised by her husband of the transaction and the nature and purpose of the meeting. When she arrived and was asked to sign the papers she did not repudiate the contract her husband had made. Instead, she ratified and approved his acts and dealings leading to the execution of the papers, and by signing the note and deed of trust signified her consent to and acquiescence in the transaction he had arranged. There is nothing to indicate that she did not benefit from the loan. In these circumstances she is estopped to deny his authority to act as her agent in her behalf, and she is chargeable with her husband's knowledge and understanding of the true contract; her husband's mistake is her mistake and she is bound thereby and must assume full responsibility therefor. Lattin v. Gray, 75 Nev. 128, 335 P.2d 778, 783; Mays v. Lagenback, 206 Ga. 859, 59 S.E.2d 376, 377 [5]. And see Lusher v. Sparks, W.Va., 122 S.E.2d 609, 616 [9].

■ Appellants make the further point that "there was no evidence as to the present ownership of the real estate involved so that the plaintiffs did not sustain their burden of proof and the court therefore did not have sufficient facts before it to justify the decree of reformation." Paragraph 5 of appellants' motion for a new trial alleged "That the plaintiffs plead that defendant, Stacy Perryman, is the record owner of the premises in question in the case at bar and said defendant hereby admits that he is the record owner of said land * * *." Apparently what appellants have in mind is that plaintiffs assumed the burden of proving that the Perrymans conveyed Lots 1 and 2 to his father Stacy Perryman for the purpose of hindering and delaying plaintiffs as creditors, and of proving that Stacy Perryman took title with notice of the mistake in the description, and therefore was not a bona fide purchaser, but failed to prove these facts, and therefore plaintiffs are not entitled to reformation. That Stacy Perryman is not to be considered a bona fide purchaser without notice is evident from the admitted facts. Stacy Perryman testified that he was present at the home of his son Hershel when Lee Ethridge came to look at the property; that he accompanied Ethridge during his inspection of the property and overheard the conversation between Hershel and Ethridge with respect to what property was to stand as security for the loan. We have found that Hershel and Ethridge agreed that all three lots were to be included in the deed of trust, and therefore Stacy Perryman must have known that fact at the time, November 29, 1960, when he took deeds to Lots 1 and 2. (Appellants' motion for new trial admits that the Perrymans parted with title before the commencement of this action, which was on November 30, 1960. It is admitted that record title to Lots 1 and 2 was in Hershel and Myrtle Perryman on November 28, 1960, so the deed must have been made to Stacy on November 29, 1960, as alleged by plaintiffs.) Although there is no direct evidence that Stacy Perryman actually knew of the mistaken omission of Lots 1 and 2 from the deed of trust, he must be held to have been in possession of sufficient facts, as above indicated, to put him on inquiry by which in common reason and prudence he could have discovered the facts, and that he is thus deprived of the status of a bona fide purchaser without notice. Walters v. Tucker, Mo.Sup., 308 S.W.2d 673, 675.

Appellants further assert error in overruling appellants' motion to dismiss the petition and in refusing appellants' request for a continuance. The original petition was framed on the theory that the court should reform not only the deed of trust but also reform the trustee's notice of sale and trustee's deed, so as to directly invest plaintiffs with title to Lots 1 and 2. Defendants filed motions to dismiss the original petition on the ground that it failed to state a cause of action. See Colin v. Moldenhauer, 338 Mo. 827, 92 S.W.2d 601; Schwickerath v. Cooksey, 53 Mo. 75, 80. After a hearing the court, evidently considering that no claim for relief was stated, permitted plaintiffs to amend their petition by deletion and interlineation, so as to allow them to go on the theory that they were entitled to reformation of the deed of trust to include the omitted tracts and a new foreclosure of the deed of trust as reformed. The deletions and amendments were made and plaintiffs announced ready to go to trial on the amended petition. Defendants, not ready, announced that new questions were raised which would require research and asked for delay. The court required defendants to go to trial, after permitting them to make an oral motion to dismiss the amended petition for failure to state a claim upon which relief could be granted. The oral motion was taken with the case. On appeal it is contended that no "cause of action" was stated either before or after amendment; that after amendment the case was not at issue and should not have been ordered to trial; that under Supreme Court Rule 55.53, V.A.M.R. and § 509.490 RSMo 1959, V.A.M.S., defendants were entitled to 10 days within which to file a responsive pleading

We find no error in the action of the trial court. The amended petition stated a claim upon which relief can be granted. "[E]quity has jurisdiction on a proper showing made to correct the description in the original mortgage and to order another foreclosure and sale by the proper description, * * *." 76 C.J.S. Reformation of Instruments, § 42, p. 392, fn. 28; Conyers v. Mericles, 75 Ind. 443; McCasland v. Aetna Life Ins. Co., 108 Ind. 130, 9 N.E. 119; Fisher v. Villamil, 62 Fla. 472, 56 So. 559, 39 L.R.A.,N.S., 90; Marks v. Taylor, 23 Utah 470, 65 P. 203. There was no error in overruling the motion to dismiss. We find no abuse of discretion in ordering the case to trial without further delay. An amendment of an adversary's pleading does not entitle a party to a continuance as of course, Peterson v. Metropolitan St. Ry. Co., 211 Mo. 498, 111 S.W. 37, and where it appears from the pleadings, application for continuance and testimony that the parties have prepared to meet the issues tendered by the amendment, a continuance on account of the amendment is not necessary. Mangelsdorf Bros. Co. v. Harnden Seed Co., 132 Mo.App. 507, 112 S.W. 15. No showing was made that defendants were not ready to meet the allegations of the amended petition, or that different witnesses not then available would be required, or that defendants' rights were prejudiced in any manner. Counsel for defendants conceded at the hearing in circuit court that in the amended petition plaintiffs were asking for some but not all of the relief prayed for in the original petition, and that "the evidence would be the same."

The decree is affirmed.

COIL, C., not participating.

HOLMAN, C., concurs.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.