FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF NEVADA, Appellant and Cross-Respondent, *v.* RACQUET CLUB CONDOMINIUMS, Respondent and Cross-Appellant.

No. 20363

November 28, 1990                    801 P.2d 1360

*Stephens, Knight & Edwards*, Reno, for Appellant and Cross-Respondent.

*Margo Piscevich*, and *Kimberley Palmer Fenner*, Reno; *Hale, Lane, Peek, Dennison & Howard*, Reno, for Respondent and Cross-Appellant.

## OPINION

*Per Curiam:*

This case arises out of a dispute between appellant First Federal Savings and Loan (First Federal) and respondent Racquet

Club Condominiums (RCC) as to the legal ownership of two condominiums, units 49 and 50. Prior to September 14, 1982, Western Camino Leasing (Western Camino), a partnership comprised of Philip and Karen Benner and Stephen and Judy Sampaulesi, owned units 49 and 50. On September 14, 1982, Western Camino conveyed unit 49 to the Benners and unit 50 to the Sampaulesis. Deeds of trust identifying First Federal as the beneficiary were executed on both conveyances. These deeds, however, mistakenly described the encumbered units. The deed of trust recorded pursuant to the conveyance on unit 49 encumbered unit 50. The deed of trust recorded pursuant to the conveyance of unit 50 encumbered unit 49.

On November 8, 1985, First Federal Savings commenced foreclosure proceedings on units 49 and 50, when both the Benners and the Sampaulesis defaulted on their obligations to First Federal under the terms of the loan. RCC, however, had already foreclosed on units 49 and 50 due to the owners' failure to pay their association fees. Because First Federal had a deed of trust describing incorrect units, RCC claimed that First Federal had no interest in the property. First Federal thus filed an action against RCC alleging that First Federal was the legal owner of units 49 and 50, and that its foreclosure extinguished all of RCC's rights, title, and interest in units 49 and 50.[1] After several motions and the trial judge reversing his orders on at least two occasions, RCC was granted summary judgment. The district court ruled that First Federal, as a matter of law, acquired no interest in units 49 and 50. The district court also stated that since First Federal had no interest in units 49 and 50, it lacked any standing to reform the deeds.

On appeal, First Federal contends the following: (1) that the district court erred when it determined that it could not reform the deeds because the original parties to the transaction were not before the court; (2) that the necessary and proper parties to an action of reformation do not necessarily include the original parties to the transaction; (3) that those persons having a legal or equitable interest in the property and who would be affected by a decree reforming the deed are necessary parties to a claim for a deed reformation; and (4) that the only necessary and proper parties to the issue of reformation are First Federal and RCC because they are the only parties claiming an interest in units 49

---

[1]First Federal first asked the district court for reformation of the deeds when it filed its opposition to RCC's motion for summary judgment. First Federal requested reformation of the original deeds to conform to the intent of the parties.

and 50. We agree with First Federal's position and reverse the judgment of the trial court.

Courts in this state will reform contracts and deeds in accordance with the true intention of the parties when their intentions have been frustrated by a mutual mistake. Lattin v. Gray, 75 Nev. 128, 335 P.2d 778 (1959); Roberts v. Hummel, 69 Nev. 154, 243 P.2d 248 (1952); Holman v. Vieira, et al., 53 Nev. 337, 300 P. 946 (1931); Ruhling v. Hackett, 1 Nev. 360 (1865). Reformation is available to a party seeking to alter a written instrument which, because of a mutual mistake of fact, fails to conform to the parties' previous understanding or agreement. Helms Constr. v. State ex rel. Dep't Hwys., 97 Nev. 500, 634 P.2d 1224 (1981). Reformation is an equitable remedy and should be available when fairness demands such relief. *See* Anderson v. Weise, 95 Nev. 540, 598 P.2d 1144 (1979).

A case similar to the instant case is Johnston v: Sorrels, 729 S.W.2d 21 (Ark.App. 1987). In *Johnston* the Sorrels sought a loan from Central Arkansas Production Credit Association (also a respondent). When the Sorrels defaulted, Central Arkansas Production Credit Association foreclosed. The Johnstons bought the property at the foreclosure sale. Approximately two years after the foreclosure, the Johnstons discovered that the legal description contained in the mortgages, the foreclosure documents, and the commissioner's deed did not include a 29.41 acre tract of land which the Johnstons thought had been part of the land sold at the foreclosure sale. The Johnstons sought reformation of all relevant documents, claiming that it had been the clear intent of the Sorrels to include the 29.41 acre tract as part of the land being mortgaged and that the tract had been omitted by mutual mistake from the legal description in the mortgages and all subsegment documents. The lower court dismissed the Johnstons' complaint because they were not parties to the mortgage, nor had they shown that the mortgagors (the Sorrels) engaged in any conduct causing a bid on the property which would not otherwise have been made. *Id.* at 23. In reversing the trial court, the Arkansas Court of Appeals noted:

> It is well established that when land is held pursuant to a deed of trust or mortgage so as to secure a debt, and by mutual mistake the parties have omitted from the legal description a tract of land intended to be conveyed, a party to the mutual mistake who subsequently purchases under a decree of foreclosure is entitled to reformation of the deed of

trust or mortgage, the decree, and the commissioner's deed so as to include the omitted tract.

*Id.* at 23 (citations omitted).

Here, although condominiums and not land are involved, and the mistake was in the unit number rather than omission of a tract of land, the *Johnston* principles should still apply. First Federal, like the Central Arkansas Production Credit Association in *Johnston,* took from the Benners and the Sampaulesis pursuant to its deeds of trust on both units. First Federal, and the mortgagors, by mutual mistake, included the wrong condominium units in the mortgage instruments, and there is no question that the units were mistakenly described.

The court in *Johnston* also noted that, "[r]eformation is predicated upon the equitable maxim that equity treats that as done which ought to be done." *Id.* at 23 (citation omitted). Here, not allowing First Federal to reform its deeds would result in a windfall profit to RCC, a nonprofit organization. RCC's interest arose out of the Benners' and the Sampaulesis' failure to pay their association fees. RCC's lien was in the amount of $2,293.27 on unit 49 and $2,125.27 on unit 50. For RCC to now receive the unencumbered interests in both condominiums would result in an award to RCC of over $200,000.00 (the estimated worth of the units) and a loss to First Federal of over $160,000.00 (the amount of the unpaid loans). RCC would reap an extraordinary benefit from a technical mistake which never caused harm to RCC. In light of our resolution of this issue, we need not consider the other contentions raised by appellant; nor need we consider RCC's cross-appeal for attorney's fees.[2]

Accordingly, we reverse and remand this matter to the district court with instructions to reform First Federal's deeds of trust.

---

[2]The district court also found, as one of its reasons for not allowing reformation, that there was no privity. However, the *Johnston* court notes that "privity does not restrict reformation . . . only to those who were parties to the mistake." *Id.* at 23. *Johnston* only required that the party seeking reformation is able to introduce such clear, concise, and convincing evidence as to whether the omission, void description, or similar deficiency occurred either by mutual mistake of the parties to the instrument sought to be reformed or by mistake of one of the parties and the inequitable conduct of the other. *Id.* at 24.